MATTER OF L—

In DEPORTATION Proceedings

A–4226313

*Decided by Board August 8, 1960*

Deportability—Section 241(a)(6) of 1952 Act—Membership in Finnish Workers Federation—Affiliation with Communist Party—Distribution of proscribed literature.

Evidence—Jencks rule—Recall of Government witnesses after completion of cross-examination.

(1) Membership in Finnish Workers Federation supports deportation charges under section 241(a)(6) of Immigration and Nationality Act upon evidence establishing that Finnish Workers Federation was an "affiliate" of the Communist Party of the United States within meaning of subparagraph (C)(v); or Finnish Workers Federation was an organization that distributed material advocating doctrines of world communism within meaning of subparagraph (H).

(2) Consistent support of Communist Party by Finnish Workers Federation establishes "affiliation" within definition of section 101(e)(2); unnecessary to show that Finnish Workers Federation was an "integral part" of the Communist Party.

(3) Respondent not entitled under *Jencks* rule to demand recall of Government witnesses for further cross-examination where witnesses were dismissed and respondent made no request for production of their pre-hearing statements prior to completion of cross-examination.

CHARGES:

Order: Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—After entry, member of or affiliated with organization that distributes or publishes written or printed matter advocating doctrines of world communism.

Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—After entry, member of or affiliated with affiliate of Communist Party of United States.

BEFORE THE BOARD

DISCUSSION: This case is before us on appeal from a decision of a special inquiry officer directing the respondent's deportation.

The respondent is a 58-year-old married male, native and citizen of Finland, who last entered the United States on June 5, 1914, at which time he was admitted for permanent residence. The special inquiry officer concluded that the two charges stated above were

14

sustained. The sole issue to be determined is whether the respondent is deportable on either or both of these charges. For the reasons hereinafter stated, we hold that both charges are sustained.

We have carefully review the entire record. The respondent conceded that he is an alien but disputed the fourth, fifth and sixth allegations of the order to show cause. These were to the effect that the respondent was a member of the Finnish Workers Federation of the United States; that this organization was a section, branch, affiliate or subdivision of the Communist Party of the United States; and that the Finnish Workers Federation of the United States has published or distributed printed matter advocating the economic, international and governmental doctrines of world communism. "World communism" and the advocating of its doctrines are defined in 8 U.S.C. 1101(a)(40) and 1101(e)(3). In his decision, the special inquiry officer stated that the respondent's membership in the Finnish Workers Federation of the United States encompassed at least the period from March 1930 to 1940. The organization will ordinarily be referred to hereinafter as Finnish Workers Federation except where other names used by it become relevant.

In *Matter of D—*, 4—578, 585–586 (1951), we held that the International Workers Order was affiliated with the Communist Party and that by virtue of that alien's membership in the IWO he was affiliated with the Communist Party. Relying on that case, the special inquiry officer found that the respondent, during the period of his membership in the Finnish Workers Federation, was *affiliated* with the Communist Party and was *affiliated* with an organization (the Communist Party) that distributed printed matter advocating the doctrines of world communism. The second charge against this respondent is not that he was affiliated with the Communist Party but that he was a member of an affiliate of the Party, and the factual allegations in the order to show cause make it clear that both charges are predicated on his *membership* in the Finnish Workers Federation. Under the circumstances, we do not consider that there is properly before us the question of whether the respondent was affiliated with the Communist Party and we decline to express an opinion on that point.

In tracing the history of the Finnish Workers Federation, the Service in its brief (Point II) has commenced with the founding of the Finnish Socialist Federation at Hibbing, Minnesota, in August 1906 and has made the following assertions. The left wing branch of the Finnish Socialist Federation seceded from the Socialist Party about January 1, 1921. About 1922 or 1923 the leftists joined the Workers (Communist) Party en masse and became known as the Finnish Federation of that Party. Early in 1925 the Executive Committee of the Comintern ordered the Communist parties of the

world to dissolve and to reorganize on a shop-and-street-nuclei basis. The Workers (Communist) Party in August 1925 passed a resolution to dissolve itself and its language federations. Subsequently the Finnish Federation dissolved but an Interim Committee was established to look after the affairs of its locals. Thereafter, the Interim Committee took steps to lay the foundation for a new Finnish mass organization, and a new federation came into existence in January 1927 as shown by the report of proceedings of the Finnish Workers Federation of the United States at the founding delegate convention at Chicago, Illinois (exh. 13).

Evidence was introduced for the purpose of establishing the matters set forth in the previous paragraph. In his decision, the special inquiry officer stated that since there was a dissolution of the Finnish Federation in 1925, the Government must establish the existence of an organization subsequent to 1925, and he specifically held that the Finish Workers Federation of the United States was organized in 1927. It appears, therefore, that the special inquiry officer did not regard the events preceding 1927 as having any direct bearing on the respondent's case. Although most of the material antedating 1927 need not be considered, we will comment on two matters which do have significance.

First, the 1925 report of the Central Executive Committee to the Fourth National Convention of the Workers (Communist) Party, at which time the Finnish Federation was actually a section of the Party, contained the statement that the Party published 27 periodical publications in 19 languages. Included were the Finnish daily papers—"Tyomies and Eteenpain," and it was stated that the Federation controlled the majority of membership or stock in its publishing concerns—Tyomies Society and Eteenpain Cooperative Society (exh. 12). In this connection, the testimony of witness E—S— is to the effect that the left or Communist element in the Finnish Federation established "Eteenpain" in 1921, and that he (the witness) was the first editor and remained such until 1925. The Executive Committee of the Finnish Workers Federation stated that "Eteenpain" was directly owned and published by the Federation ("Eteenpain," issue of May 23, 1941, exh. 37). J—W— testified that "Eteenpain" and "Tyomies" were official organs of the Finnish Workers Federation. Commencing about 1931 and for some years thereafter, "Eteenpain" was published at 35 East 12th Street, New York City, which was also the address of the Communist Party National Headquarters and the Finnish Workers Federation. The two daily papers were merged in 1950 under the name of "Tyomies-Eteenpain."

The second matter relates to exhibit 7 which shows that the Finnish Socialist Federation, Inc., was organized under the law of Illi-

nois on October 31, 1921, and that on August 22, 1927, its name was changed to Finnish Federation, Inc. It appears from the testimony of witness J—W—, who also used the name H—P—, that he signed a document relating to the corporation's change of name and that Finnish Federation, Inc., was the Illinois corporation which was identical with the unincorporated Finnish Workers Federation of the United States that had been founded in January 1927. Exhibit 7 also shows that on March 19, 1930, this Illinois corporation was authorized to do business in New York; that as of April 2, 1956, there was no record of a surrender of authority; and that a suit filed by Illinois against the corporation resulted in its dissolution on May 26, 1938.

During the period that the Illinois corporation was authorized to do business in New York, the Finnish Workers Federation created two corporations under the law of New York—Finnish Workers Federation of the United States, Inc., on January 8, 1932 (exh. 6), and F–A Printing Corporation on May 29, 1936 (exh. 5). The relationship between these various Finnish organizations is established by exhibit 29 relating to *Viesti*, which was a monthly publication of the Finnish Workers Federation. This exhibit contains copies of the statements filed under the Act of August 24, 1912, during the years from 1931 to 1936, inclusive. From 1931 to 1935, the publisher and the owner were shown as Finnish Federation, Inc., and in 1936 as F–A Printing Corporation. The stockholders of Finnish Federation, Inc., from 1931 to 1935 were shown as certain individuals and Finnish Workers Federation, except that "Inc." was added on March 29, 1932, and it was referred to as Finnish Workers Federation *of United States*, Inc., commencing on September 29, 1933.

The certifications dated September 28, 1934, and September 27, 1935, which are part of exhibit 29, *supra*, show that one of the trustees under a trust chattel mortgage was "W. L—." The certification of September 29, 1936, indicates that the respondent was one of the stockholders of F–A Printing Corporation and also one of the trustees under a trust chattel mortgage. W—L— was one of the subscribers of the certificate of incorporation (exh. 5) filed by the F–A Printing Corporation on May 29, 1936, and was named as one of the directors. The respondent admitted that he was the W—L— referred to in exhibit 5.

The respondent identified his signature on his 1940 Alien Registration Form (exh. 3) and on his preliminary form for petition for naturalization (exh. 4) which was submitted to the Service in 1940. The respondent also made statements (part of exh. 2) before officers of the Service on May 30, 1944, and May 11, 1945. These three exhibits contain the respondent's admission that he was a member of

the Finnish Workers Society of Brooklyn from 1932 to 1940; that he was its Recording Secretary from 1935 to 1938; and that he was farm editor of a Finnish daily called "Eteenpain" which was published by Finnish American Printing Corporation or F-A Printing Corporation. The issues of "Eteenpain" dated March 16, 1930, and September 19, 1946, disclose the respondent as one of the four editors and he is also shown as being one of the editors in the issue of September 30, 1939 (exhs. 14, 57 and 51). Witness J—W— testified that the Brooklyn Finnish Workers Club was a member of the Finnish Workers Federation.

From statements made by counsel at pages 20 and 24 of his brief, it appears that he concedes that the respondent was a member of Finnish Workers Federation of the United States, Inc., the New York Corporation which was created on January 8, 1932. He contends that the special inquiry officer held that the respondent was a member in 1930, two years before the New York corporation was chartered. Actually, the order to show cause does not contain the word "Inc." and, since the special inquiry officer adopted its allegations as his findings of fact, he found the respondent to have been a member of the Finnish Workers Federation of the United States which is the precise name of the organization which was founded at Chicago in January 1927. We do not consider that it is of any particular legal significance that this organization employed the device of an Illinois corporation and later a New York corporation inasmuch as 8 U.S.C. 1101(a)(28) specifically defines the term "organization" as including a group of persons associated together whether or not incorporated. This contention of counsel is, therefore, overruled.

In his brief (Point II), counsel assumes that the first charge in the order to show cause is based on subparagraph (D) of paragraph (6) of section 241(a) of the Immigration and Nationality Act [8 U.S.C. 1251(a)]. The order to show cause, the brief filed by the Service, and the special inquiry officer's decision merely refer to section 241(a) of the Immigration and Nationality Act without specifying the paragraph and subparagraph involved. Actually, the language which appears in the order to show cause indicates that the first charge is predicated on subparagraph (H) which incorporates printed matter of the character described in subparagraph (G). The language of these two subparagraphs which is pertinent to the respondent's case is as follows: "Aliens who are members of * * * any organization that writes, circulates, distributes, prints, publishes, or displays, * * * any written or printed matter * * * advocating or teaching * *-* (v) the economic, international, and governmental doctrines of world communism * * *." Since counsel's argument on this point would be equally applicable to subparagraphs (G) and

18

(H), we will consider it as being addressed to the statutory language we have quoted.

In Point II of his brief, counsel contended that the statute authorized deportation only for membership in a continuing organization. He asserted that the Finnish Workers Federation ceased to exist in 1940 or 1941, but this is disputed by the Service. The Finnish Workers Federation became a section of the International Workers Order in June 1941 (exh. 35), and at a later date became known as Finnish American Mutual Aid Society. Even the book edited by the respondent in 1953 (exh. 39, p. 230) quoted a 40th anniversary proclamation (1946) which indicated that the Finnish Workers Federation was then in existence although its *official* name was Finnish American Mutual Aid Society. The 1946 proclamation was published in the September 19, 1946, issue of "Eteenpain" (exh. 65). As we will indicate, however, it is actually immaterial whether this organization ceased to exist about 1941.

Counsel's argument that the statutory language does not apply to defunct organizations is predicated on the fact that subparagraph (D) of 8 U.S.C. 1251(a)(6) employs the present tense. That is also true with respect to all the other subparagraphs of 8 U.S.C. 1251(a)(6). However, the opening sentence of that statutory provision makes it applicable to any alien who "is or at any time has been, after entry, a member of any of the following classes of aliens." Hence, it is immaterial that the present tense was used in the subparagraphs because the respondent was a member from 1930 to 1940 of the classes of aliens mentioned in subparagraphs (C), (G) and (H).

In his argument under Point II, counsel contends that the provisions of the Subversive Activities Control Act of 1950 (Title I of the Internal Security Act of 1950; 64 Stat. 987) show that 8 U.S.C. 1251(a)(6) does not relate to defunct organizations which would be unable to defend themeslves against the charge of being subversive. Section 22 of the Internal Security Act amended the Act of October 16, 1918, as amended [8 U.S.C. 137, 1946 ed.], and counsel is correct in his statement that much of the language was later incorporated in the Immigration and Nationality Act [8 U.S.C. 1182(a)(28) and 1251(a)(6)]. Section 403(a)(16) of the Immigration and Nationality Act [66 Stat. 279] repealed the 1918 Act and all amendments thereto, thus effecting the repeal of section 22 of the Internal Security Act. Other provisions of the Subversive Activities Control Act requiring communist organizations to register were not affected by the repeal of section 22, thus indicating that the provisions relating to registration of subversive organizations do not have any direct bearing on the provisions relating to deportation.

Counsel stated that a question had been raised during the oral

19

argument as to whether the organization committed fraud by concealing its true purposes. We do not think there was such concealment but, on the contrary, as will hereinafter appear, we believe the organization actually revealed its affiliation with the Communist Party.

Under 8 U.S.C. 1251 (a) the delegated officers of the Attorney General must determine whether an alien is deportable. In the respondent's case this requires a determination of whether the Finnish Workers Federation was an affiliate of the Communist Party and whether it published the proscribed literature. The proceeding is not against the organization, and there is no merit in counsel's argument that the organization is defunct and cannot defend itself. The question of whether the Finnish Workers Federation could have been required to register under the Subversive Activities Control Act is entirely irrelevant.

Counsel stated that he has been unable to find any deportation case based on membership in the Finnish Workers Federation. However, it is immaterial whether deportation has previously been predicated on that fact, the only issue being whether this respondent is deportable under the statute.

Counsel also stated that the decision in *United States ex rel. Kettunen v. Reimer*, 79 F.2d 315 (C.C.A. 2, 1935), shows that the Service during 1935 did not consider that membership in the Finnish Workers Federation was a basis for deportation. The statute then in existence did not authorize the deportation of a member of an organization which was an *affiliate* of a proscribed organization, and the question in that case was whether the alien himself was affiliated with the Communist Party. However, it is clear from the opinion that the charge of affiliation was based on acts entirely unrelated to his admitted membership in a Finnish Workers Club. The court merely stated that the Government did not claim that Kettunen's membership in the Finnish Workers Club made him liable to deportation. There is nothing to indicate that the Government was aware at that time that the Finnish Workers Federation was an affiliate of the Communist Party and, as we have indicated, such affiliation between the organization would not have rendered Kettunen deportable although he would have been deportable if he had been affiliated with the Communist Party itself. For the reasons mentioned, that case is of no assistance in determining the question involved here. In view of the foregoing, we dismiss the various contentions set forth in Point II of counsel's brief.

As we have indicated above, counsel evidently concedes that the respondent was a member of the Finnish Workers Federation of the United States, Inc., but he states that his sole activity in the Federation was membership in a Brooklyn local. However, he con-

20

tends that such membership was not meaningful. We will defer discussion of this contention of counsel until later herein and will first discuss the evidence relating to the affiliation between the Finnish Workers Federation and the Communist Party and the evidence which establishes that the Finnish Workers Federation distributed and published printed matter advocating the doctrines of world communism. The evidence as to these two matters is interrelated and much of it also has a bearing on whether the respondent's membership was meaningful.

In the fifth allegation of the order to show cause it was stated that the Finnish Workers Federation was a "section, branch, affiliate or subdivision" of the Communist Party of the United States. The quoted words appear in 8 U.S.C. 1251(a)(6)(C)(v). In its brief (Point II), the Service does not claim that the Finnish Workers Federation was a section, branch or subdivision of the Communist Party but relies solely on the word "affiliate." This was also the finding of the special inquiry officer.

Counsel contends in his brief (Point I, pp. 6-7) that 8 U.S.C. 1251(a)(6) does not include front organizations of the Communist Party. He did not specifically concede or assert that the Finnish Workers Federation was a Communist front organization. In any event, the term "Communist *front* organization" does not appear in 8 U.S.C. 1251(a)(6), and the issue in the respondent's case must be determined, not on the basis of whether the Finnish Workers Federation was a Communist front organization, but whether it was an *affiliate* of the Communist Party.

In this connection, counsel also asserts that the Service did not prove that the Finnish Workers Federation was an integral part of the Communist Party and he contends that the word "affiliate" must be so limited under the rule of *ejusdem generis* since he claims that all the other words appearing in 8 U.S.C. 1251(a)(6)(C)(v) plainly refer to integral parts of the Communist Party. The International Workers Order was apparently not an integral part of the Communist Party but we have previously held that it was an affiliate of the Party (*Matter of D—, supra*, 4—578, 586; *Matter of C—*, 6—20, 21 (Atty. Gen., 1955). Furthermore, the doctrine of *ejusdem generis* is to the effect that, where general words in a statute follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. In other words, this rule may be utilized where there is an enumeration of particular classes followed by a term such as "other." Here, only specific terms were used and they are not followed by any general term. Accordingly, the doctrine of

*ejusdem generis* has no application to the respondent's case and we reject this contention of counsel.

The words appearing in a statute are to be given their ordinary and commonly understood meaning (*Addison* v. *Holly Hill Fruit Products*, 322 U.S. 607, 618 (1944)). In addition to the commonly understood meaning of "affiliate" as an organization created by or associated with another organization, we have also the specific definition in 8 U.S.C. 1101(e)(2) that the giving or promising of support or of money for any purpose to any organization shall be presumed to constitute affiliation therewith. The question of whether the Finnish Workers Federation was an affiliate of the Communist Party is to be determined in accordance with these criteria.

The report of proceedings of the Finnish Workers Federation of the United States at the founding delegate convention in January 1927 (exh. 13) and the report of the second convention in 1929 (exh. 28) were identified by witness J—W— as being official printed copies of the minutes of the two conventions. The 1927 report shows that the last convention of the former federation in 1925 empowered the Finnish Bureau of the Workers (Communist) Party to take steps toward founding a new Finnish workers' organization and to supervise its activities. The report contains the specific statement that the new organization was being established along those lines laid down by the Finnish Bureau of the Party.

The report of proceedings of the 1929 convention of the Finnish Workers Federation (exh. 28, English translation at the page numbers indicated) discloses the following information. There are such statements as "Long live the Communist Party of America" and "Long live the Communist Internationale" (pp. 32, 35, 43). It was stated that the Federation's purpose was to follow the ideals of the Workers (Communist) Party and of the Communist Internationale (p. 28), and that "Eteenpain," from the ideological standpoint, had represented the correct Workers (Communist) Party political line (p. 40). The 1929 convention decided that the Federation offices should be moved to New York in order that the Federation might have daily contact with the Central Office of the Executive Committee of the American Communist Party and might be drawn closer to the Party (pp. 41–42). All members of the Federation were urged to join the Communist Party and to become active in it (pp. 14, 16).

In *Kjar* v. *Doak*, 61 F.2d 566, 569 (C.C.A. 7, 1932), it was stated that in the absence of evidence to the contrary it would be presumed that the organizations continued to advocate and teach the same principles as were set forth in the documents produced. No evidence was offered in the respondent's case to show that the Finnish Workers Federation ever ceased its support of the Communist Party. On

22

the contrary, there is specific evidence of the continuation of such support.

Exhibit 14 consists of those pages of the March 16, 1930, issue of "Eteenpain" which contained the February 1930 open letter of the Comintern to the Central Executive Committee of the Communist Party of America. The letter discussed the Finnish mass organizations, the Finnish Workers Clubs and the three Finnish daily papers, and it was specifically addressed to the Finnish members of the Communist Party and contained instructions to them. These Finnish members constituted Communist fractions in the Finnish Workers Federation and in its local clubs. Exhibit 14 contains statements that the newspapers of the Finnish Workers Federation had been brought more closely under the influence of the leadership of the Communist Party; that friction between the Finnish Workers Clubs and the Communist Party should cease; and that all activity in the Finnish Workers Clubs must be under the direction of the Party and under the guidance and leadership of the Communist fractions. The letter shows the attitude of the Comintern and of the Communist Party of America toward the Finnish Workers Federation and does not, of course, disclose the Federation's attitude toward the former. Nevertheless, when "Eteenpain," an official organ of the Finnish Workers Federation, published this letter, we believe the conclusion is inescapable that the Finnish Workers Federation was openly admitting its connection and affiliation with the Communist Party and indicating approval of the statements in the letter.

Exhibit 19 is a copy of the magazine *Punatahti* (Red Star). On its first page appears the statement that it was published in New York City in 1934 by the Finnish Federation, Inc. Commencing on page 30 is an article by Hans Johnson, Secretary of the Finnish Workers Federation, in which readers were urged to join the Finnish Workers Federation and the Communist Party of the United States. The article concludes with the statement that this will help the workers to gain victory in overthrowing the whole capitalist system and establishing a Soviet America. In an article commencing on page 48, a number of publications were listed including the "Communist Manifesto," "Lenin and Leninism," and "State and Revolution," and it was stated that these could be purchased from the Finnish Federation, Inc. The same magazine contains a poem by the respondent which refers to the example of the men and women of Moscow and the ultimate victory of the sickle and hammer people.

Exhibits 71 and 72 are English documents with Finnish translations which were published by Finnish Workers Federation and Finnish Federation, Inc., respectively. Exhibit 71 contains the report of the Central Committee to the Eighth Convention of the

23

Communist Party of the United States in 1934 as delivered by Earl Browder. Exhibit 72 is a pamphlet entitled "Toward Revolutionary Mass Work" which was issued by the Central Committee of the Communist Party in 1932. Exhibit 25 is a document published by Finnish Federation, Inc., about 1935 containing the Finnish version of Dimitrov's closing speech to the Seventh Congress of the Third Internationale in 1935 and including also the resolution adopted by the Congress.

A pamphlet (exh. 26) was published by "Eteenpain" at Worcester, Massachusetts, about April 1930 to commemorate its tenth anniversary. It contains two poems by the respondent and an article by him entitled "The Eteenpain on the Cooperative Front." In this article it was stated that the newspaper "stands for an ironclad and uncompromising class struggle viewpoint, the Marxist-Lenin cooperative line * * *"; that the paper bears witness to the truth of the teachings "of our great leader, Lenin"; and that, after the revolution of the proletariat, workers' cooperatives shall be the first socialist institutions. The same exhibit also contains an article by Richard Pesola, then editor of "Eteenpain," in which he referred to the dismissal of two "Eteenpain" officials on December 30, 1928, and said: "Since then there has been but one staff on the 'Eteenpain,' whose highest ambition has been to advance the principles and wishes of the Communist Party among the Finnish workers."

Exhibit 24 is a magazine celebrating the 15th anniversary of Soviet Karelia. It was published in 1935 by the Finnish Federation, Inc. On page 96 of the magazine appears an advertisement concerning the Finnish Workers Federation's newspapers and literature which reads, in part, as follows: "It has fallen to the lot of our Federation's newspaper businesses to provide our Finnish American people with Marxist-Lenin literature * * *. Our newspaper publishing activity is widespread. We distribute from 100,000 to 200,000 books and articles annually. * * * Books by Marx, Engels, Lenin, Stalin, Kuusiuen, Browder, and by our other great leaders for worker reading and study clubs." The advertisement also contains the statement that "Eteenpain" and "Tyomies" are its newspapers and that "Eteenpain" is the chief spokesman for the Finnish Workers Federation.

As we indicated above, the two remaining daily papers of the Finnish Workers Federation were merged in 1950 under the name of "Tyomies-Eteenpain." A 50-year-history of the "Tyomies" was published in 1953. The title page shows that it was edited by W—L— and his photographs on pages 222 and 240 indicate that he was then one of the editors of "Tyomies-Eteenpain." The special inquiry officer identified these photographs as relating to the respondent, and counsel also refers to the fact that this book was edited by the re-

spondent (brief, p. 17). This book, in Finnish, and an English translation comprise exhibit 39.

In his brief, counsel quoted parts of two paragraphs from the book mentioned above, and counsel claims that this shows the respondent's understanding of the democratic character of the Finnish Workers Federation and "Eteenpain." The quotation begins with the statement: "One of the guiding principles of our paper and our Federation along its 50-year journey has been and will continue to be the fight in behalf of democracy." Between the two excerpts quoted by counsel, there appears the statement that while the Federation was part of the Socialist Party the leadership represented a typically middle-class form of democracy; that the Federation's papers published many articles on Lenin's theoretical articles; and that from the days of the Russian October Revolution an internal dispute commenced in the Socialist Party and the Federation "which confirmed our membership and our papers' reading public in their conception of Marxist democracy." Hence, we are satisfied that, when the respondent speaks of democracy, he refers to that which Soviet Russia regards as democracy and not to democracy as it is understood in this country or other countries of the Free World.

From a consideration of exhibit 39 in its entirety, we believe the conclusion is inescapable that "Eteenpain," "Tyomies," the merged paper, and the Finnish Workers Federation have consistently supported the Communist Party and that they have published printed matter advocating the doctrines of world communism. For example, on pages 236 and 237 it was stated that after World War II a new force appeared whose objective was the downfall of the Soviet Union; that the World was divided into two camps, on one side being the Soviet Union, "the people's democracy countries" and independence-seeking colonies, and on the other side being the "Wall Street-led imperialists"; and that "Tyomies" held fast to the principles of the international labor movement. At pages 251–252 there is a reference to the books which the Federation and its newspapers had published, including the "Communist Manifesto" and classics on the fundamentals of Marxism. On pages 253 to 255 it was stated that those who dared to hold that the Korean war was unnecessary were taken to a place of deportation, and that speaking in behalf of peace and presentation of true facts was "working in behalf of the enemy." The following statement (p. 255) is also significant: "During the election campaign [presumably the campaign in the fall of 1952], both major party presidential candidates vied with each other as to who could best assure reactionaries that he was the better opponent of comunism—in other words, the better qualified to defeat democracy and to destroy our Constitution."

In his brief, counsel contended that the respondent's membership

in the Finnish Workers Federation was not a "meaningful association" under the decision in *Rowoldt* v. *Perfetto*, 355 U.S. 115 (1957), and that he was not aware of the alleged affiliation between the Federation and the Communist Party. Counsel stated that the special inquiry officer, in his opinion, conceded in effect that there is only circumstantial evidence that the respondent was aware of the alleged affiliation between the Finnish Workers Federation and the Communist Party. We have found no basis for this assertion; on the contrary, the special inquiry officer specifically found that the respondent's knowledge of the affiliation had been established.

Counsel asserts that the local clubs of the Finnish Workers Federation were engaged in such activities as sports, drama and social affairs and he has referred to the testimony of Government witness J—W— who stated that the majority of the local club members were interested in such activities. Counsel also cited our decision in *Matter of C*—, 6—20, *supra*. There it was held that an alien charged with membership in a Communist front organization (the International Workers Order) was not deportable if he, in fact, did not have knowledge of the relationship of the organization to the Communist Party, and the respondent's case must, of course, be decided in accordance with that principle.

The respondent failed to testify during the immigration hearing as to whether he did or did not have knowledge of the affiliation between the Finnish Workers Federation and the Communist Party, and we will later discuss his reasons for not testifying. Counsel's claim that the respondent had denied the affiliation was apparently predicated on information appearing in the respondent's 1944 and 1945 statements (part of exh. 2). It is true that at that time the respondent had testified that the organizations of which he was a member were not affiliated in any way with the communist movement. Counsel says that this testimony is entitled to great weight because it was given long before the immigration proceeding was instituted. However, the respondent was then an applicant for naturalization and section 305 of the Nationality Act of 1940 [8 U.S.C. 705, 1946 ed.] provided for the denial of a naturalization petition if the alien had been a member of a subversive organization during the preceding ten years. Under these circumstances, we believe it would be extremely naive to assume that the respondent would have disclosed that he was a member of an organization affiliated with the Communist Party.

The respondent was one of the editors of "Eteenpain," an official organ of the Finnish Workers Federation, as early as 1930. We have previously mentioned a document published by "Eteenpain" about April 1930 which contains an article by the respondent showing that he was already aware that, in the cooperative field, "Eteen-

pain" "stands for an ironclad and uncompromising class struggle viewpoint, the Marxist-Lenin cooperative line." As late as 1952, he was a member of the editorial staff of the Federation's paper, "Tyomies-Eteenpain." The book edited by him in 1953 (exh. 39) also shows that he had full knowledge of the affiliation between the Finnish Workers Federation and the Communist Party and that he was aware that the Finnish Workers Federation distributed and published printed matter advocating the doctrines of world communism. In view of the respondent's employment with the Federation's newspapers in an editorial capacity for many years, and taking cognizance of his writings previously referred to in this decision, it is our considered opinion that the Government has established by reasonable, substantial and probative evidence that the respondent's membership in the Finnish Workers Federation was a "meaningful association"; that he was a "member" of that organization as the term "member" has been judicially defined; and that this organization was an affiliate of the Communist Party. Upon the basis of the various documents previously mentioned which were disseminated by the Finnish Workers Federation, we also conclude that this organization printed, published, circulated and distributed printed matter advocating and teaching the economic, international and governmental doctrines of world communism.

In Point V of his brief, counsel asserts that the respondent's heart condition would make it hazardous for him to testify. At the beginning of the hearing, the respondent was sworn and gave some testimony but he refused to answer when asked whether he had ever been a member of the Finnish Workers Federation. During that part of the hearing which took place from June 5 to June 17, 1958, the respondent was asked many questions but he refused to answer them at that time on the ground that the Government had the burden of establishing its case. On June 17, 1958, the examining officer stated that the Government rested and there was an adjournment of the hearing to permit translation of various exhibits.

Before the hearing reconvened on October 9, 1958, the respondent had suffered a heart attack. A letter dated July 10, 1959 (exh. 76), by the respondent's physician is to the effect that the strain of testifying might bring on another heart attack. Counsel took exception to a statement of the special inquiry officer (decision, p. 18) reading as follows: "Assuming arguendo, that an act of God thereafter prevented him from fully testifying, the respondent must nevertheless be held responsible for whatever consequence flow from the fact that he failed to answer questions which he should have answered." The special inquiry officer stated that he had not drawn any adverse inferences from the respondent's silence although he indicated that he would have done so if there had been a failure of proof in any

27

element of the Government's case. We disapprove the special inquiry officer's statement as to the conditions under which he might have drawn an inference. Under the circumstances of this case, we do not believe that any unfavorable inference should be drawn because of the respondent's refusal to testify and no such inference has been drawn by this Board.

In Point VII of his brief, counsel urges that the hearing should be reopened to permit further cross-examination of the Government witnesses although he did not indicate what facts he would expect to establish if he were permitted additional cross-examination. He relied on *Jencks* v. *United States*, 353 U.S. 657, decided June 3, 1957, and *Carlisle* v. *Rogers*, 262 F.2d 19 (C.A. D.C., 1958). The *Jencks* case was decided long before the commencement of the respondent's immigration hearing and any request for production of previous statements of the witnesses should have been made prior to the completion of counsel's cross-examination of them. As a matter of fact, this procedure was followed with respect to witness E—S— who was examined on March 26, 1958. Counsel requested a statement the witness had made in 1954; it was furnished to him by the examining officer at that time and counsel used it in cross-examining the witness.

While counsel's brief does not show the names of the witnesses he desires to have recalled, it appears from the record that he refers to witnesses H—M— and W— who had made previous statements to officers of the Service. When these witnesses appeared at the hearing during March and April 1958, they disclosed the fact that they had previously been questioned by officers of the Service but counsel made no request that their prior statements be produced. The witnesses were then dismissed after counsel stated that he had no further cross-examination.

On June 10, 1959, over one year later, counsel requested that the previous statements made by H—M— and W— be produced and that these witnesses be recalled. Thereafter, without conceding that counsel was entitled to these statements, they were submitted to him and he offered in evidence four statements of W—M— and H—'s statement which were made part of the record as exhibits 77 and 79. The Government offered the remaining M— statement which was admitted in evidence without objection as exhibit 78. The special inquiry officer denied counsel's motion for the recall of these witnesses. Counsel takes the position that when these statements were admitted in evidence he then acquired the right to cross-examine the witnesses again. We do not perceive that the admission of these exhibits served any useful purpose. It any event, we have disregarded them and we hold that counsel was not entitled to again cross-examine the witnesses merely because their statements were introduced in evidence, particularly in view of the fact that it was

counsel himself who had requested the production of the statements and who offered all but one in evidence.

Counsel also asserts that the exhibits of the Service commencing with exhibit 34 were introduced after the witnesses of the Service had completed their testimony and he contends that he should have the right to cross-examine the witnesses on these exhibits since they contain various references to the witnesses. It is obvious that there could have been no direct examination of the witnesses on these exhibits and it follows that counsel was not entitled to cross-examination of the witnesses on the exhibits introduced subsequent to the completion of their testimony. If counsel desired the opportunity to examine the witnesses concerning such exhibits, his remedy would have been to call these persons as his own witnesses or request that they be subpoenaed. Accordingly, we reject counsel's contentions contained in Point VII.

The remaining contentions of counsel are without merit and do not require specific discussion. Counsel stated that an application for discretionary relief would not be made at the hearing. For the reasons stated above, both charges are sustained and the respondent's appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.