# Matter of A-C-M-, Respondent

*Decided June 6, 2018*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien provides "material support" to a terrorist organization if the act has a logical and reasonably foreseeable tendency to promote, sustain, or maintain the organization, even if only to a de minimis degree.

(2) The respondent afforded material support to the guerillas in El Salvador in 1990 because the forced labor she provided in the form of cooking, cleaning, and washing their clothes aided them in continuing their mission of armed and violent opposition to the Salvadoran Government.

FOR RESPONDENT: Dawn Pipek Guidone, Esquire, Mineola, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Ilya Yukhtman, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY and COLE, Board Members. Concurring and Dissenting Opinion: WENDTLAND, Board Member

PAULEY, Board Member:

In a decision dated August 8, 2016, an Immigration Judge granted the respondent's request for deferral of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The Department of Homeland Security ("DHS") has appealed from that decision. The respondent filed a cross-appeal challenging the Immigration Judge's denial of her applications for Temporary Protected Status, cancellation of removal under section 240A(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b) (2012), asylum, withholding of removal, and protection under the Convention Against Torture. The respondent's cross-appeal will be dismissed and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of El Salvador who claims that she entered the United States without inspection in 1991. She was subsequently granted Temporary Protected Status, departed the country on advance parole, and returned on March 7, 2004, seeking admission. The DHS initiated removal proceedings against her, charging that she is removable as an alien without a valid entry document under section 212(a)(7)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (2006).

In proceedings before the Immigration Judge, the respondent applied for cancellation of removal. The DHS argued that she was ineligible for that relief under section 240A(c)(4) of the Act based on her undisputed testimony that she was kidnapped by guerillas in El Salvador in 1990 and was coerced into undergoing weapons training and performing forced labor in the form of cooking, cleaning, and washing their clothes.

In a decision dated December 15, 2011, the Immigration Judge found the respondent removable but granted her application for cancellation of removal. The DHS appealed. In a decision dated January 14, 2014, we concluded that the respondent is ineligible for cancellation, finding that she is inadmissible under section 212(a)(3)(B)(i)(VIII) of the Act because she received military-type weapons training from the guerrillas, who we determined were a terrorist organization in 1990. Further, we found no basis for the Immigration Judge's assertion that there is a self-defense or duress exception in section 212(a)(3)(B) of the Act. We therefore sustained the DHS's appeal and remanded the record for the Immigration Judge to consider whether the respondent is eligible for any other relief or protection from removal.[1]

On remand, the respondent applied for asylum, withholding of removal, and protection under the Convention Against Torture. The DHS conceded that although the respondent is barred from establishing eligibility for cancellation of removal based on her military/weapons training, section 208(b)(2)(A)(v) of the Act, 8 U.S.C. § 1158(b)(2)(A)(v) (2012), does not bar her from seeking asylum.

The Immigration Judge incorporated by reference the respondent's credible testimony and all the documents submitted at her cancellation of removal hearing. In her August 8, 2016, decision, the Immigration Judge found that the respondent is ineligible for asylum and withholding of removal based on the material support bar in section 212(a)(3)(B)(iv)(VI) of the Act. The Immigration Judge stated that, but for the material support bar, she would have granted the respondent's asylum application on humanitarian

---

[1]    Although the respondent again contends that her application for cancellation of removal should not have been pretermitted, we decline to revisit that issue.

grounds pursuant to *Matter of Chen*, 20 I&N Dec. 16 (BIA 1989), noting the horrific harm she experienced from the guerrillas in El Salvador because, in addition to being kidnapped and required to perform cooking and cleaning for the guerrillas under threat of death, the respondent was forced to witness her husband, a sergeant in the Salvadoran Army, dig his own grave before being killed. However, the Immigration Judge granted the respondent's request for deferral of removal pursuant to the Convention Against Torture.

## II. ISSUE

The principal issue on appeal is whether the respondent is subject to the "material support" bar in section 212(a)(3)(B)(iv)(VI) of the Act. Specifically, we must decide if the statutory definition of "material support" has any limitation based on the extent and type of support rendered.

## III. ANALYSIS

### A. Statutory Provisions

Section 208(b)(2)(A)(v) of the Act bars the Attorney General from granting asylum to an alien who is inadmissible under sections 212(a)(3)(B)(i)(I), (II), (III), (IV) or (VI), or is removable under section 237(a)(4)(B) of the Act, 8 U.S.C. § 1227(a)(4)(B) (2012). The Attorney General is also barred from granting withholding of removal to an alien when "there are reasonable grounds to believe that the alien is a danger to the security of the United States." Section 241(b)(3)(B)(iv) of the Act, 8 U.S.C. § 1231(b)(3)(B)(iv) (2012). For purposes of that provision, an alien who is described in section 237(a)(4)(B) of the Act—that is, inter alia, any alien who has engaged, is engaged, or at any time after admission engages in any terrorist activity, as that term is defined in section 212(a)(3)(B)(iv)—"shall be considered to be an alien with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States." Section 241(b)(3)(B) of the Act.

As relevant to the respondent, section 212(a)(3)(B)(iv)(VI) of the Act provides that a person engages in terrorist activity when she "commit[s] an act that [she] knows, or reasonably should know, affords material support" to a terrorist organization, as that term is defined in section 212(a)(3)(B)(vi). Section 212(a)(3)(B)(iv)(VI)(dd) of the Act requires "only that the [alien] afford material support to a terrorist organization, with the sole exception being a showing by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was of that character." *Matter of S-K-*, 23 I&N Dec. 936, 943–44 (BIA 2006),

*remanded*, 24 I&N Dec. 289 (A.G. 2007), *clarified*, 24 I&N Dec. 475 (BIA 2008). If the evidence indicates that the terrorism bar applies to an alien, he or she has the burden of proving by a preponderance of the evidence that the bar is not applicable. *See* 8 C.F.R. § 1240.8(d) (2018); *see also Matter of M-B-C-*, 27 I&N Dec. 31, 36–37 (BIA 2017); *Matter of S-K-*, 23 I&N Dec. at 939.

## B. Material Support Bar

The respondent argues on appeal that the Immigration Judge erred by finding that she is subject to the material support bar, claiming that any assistance she provided to the guerrillas in El Salvador was de minimis and therefore not "material." She further asserts that even if the material support bar is applicable to her, she is entitled to a duress exception. However, in *Matter of M-H-Z-*, 26 I&N Dec. 757 (BIA 2016), we ruled that the "material support bar" in section 212(a)(3)(B)(iv)(VI) of the Act does not include an implied exception for an alien whose material support to a terrorist organization was provided under duress. The United States Court of Appeals for the Second Circuit, in whose jurisdiction this case arises, has deferred to our interpretation. *See Hernandez v. Sessions*, 884 F.3d 107, 109 (2d Cir. 2018). Consequently, we will not address that issue further.

We must therefore decide whether the phrase "material support" contains a quantitative requirement. The respondent and the dissent contend that an insignificant degree of support provided by an alien to a terrorist organization does not constitute "material" support. We hold that no such quantitative limitation exists in the bar.[2]

We first observe that, while not dispositive, the fact that the Board and the Federal courts have uniformly rejected a duress exception to the material support bar counsels against adopting the interpretation that the respondent and the dissent support. The essence of a duress defense is that it negates culpability for one's actions, even if those actions are otherwise criminal. *See Dixon v. United States*, 548 U.S. 1, 6–7 (2006); *United States v. Bailey*, 444 U.S. 394, 409–10 (1980). A person who voluntarily renders assistance has acted culpably and would seem to present a greater threat than one whose aid was only involuntarily given. It therefore appears unlikely that Congress intended to impose the bar on an alien who was coerced into giving material support to a terrorist organization but to exempt one who willingly provided such assistance, even if it was small in degree.

---

[2] In *Ayvaz v. Holder*, 564 F. App'x 625, 628 (2d Cir. 2014), the Second Circuit concluded that the term "material" is ambiguous and remanded for us to issue a precedential decision interpreting the statute. Our decision in this case responds to the court's request.

In *Matter of S-K-*, 23 I&N Dec. at 943, we stated that we were "unaware of any legislative history which indicates a limitation on the definition of the term 'material support.'" We also agreed with the DHS that it is plausible that the list in section 212(a)(3)(B) of the Act was intended to "cover virtually all forms of assistance, even small monetary contributions." *Id.* at 945. However, we ultimately found it unnecessary to address the alien's argument that the term "material" should be given "independent content," because the amount of money she provided was sufficiently substantial to have an effect on the terrorist organization's ability to accomplish its goals. *Id.*

We agree with the Third Circuit that the word "material" in the phrase "material support" must be "ascribed some meaning." *Sesay v. Att'y Gen. of U.S.*, 787 F.3d 215, 222 (3d Cir. 2015). However, we conclude that the meaning does not relate to a quantitative requirement. We reiterate that there is no legislative history to support taking a quantitative approach and separating out what amount of support is necessary to make it "material." If an alien affords material support to a terrorist organization, he or she is subject to the bar, regardless of how limited that support is in amount.

This interpretation does not render the word "material" superfluous. Without that qualification, the bar could have been construed to apply to a person who merely expressed general "support" for a terrorist organization, which would have raised substantial freedom of expression concerns. *Cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 38–39 (2010) (upholding a conviction under the criminal analogue to the material support bar in the face of a First Amendment challenge).

In sum, "material support" is a term of art that "relates to the type of aid provided," that is, aid of a material and normally tangible nature,[3] and it is not quantitative. *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1015 (7th Cir. 2002);[4] *see also Singh-Kaur v. Ashcroft*, 385 F.3d 293, 298–99 (3d Cir. 2004) (noting that "material support" is a broad concept that is not limited to the enumerated examples and deferring to our determination that the "provision of food and setting up tents" was within the definition of "material support"); *Matter of S-K-*,

---

[3]  The Court in *Humanitarian Law Project*, 561 U.S. at 36–40, considered that speech in the form of "training" could be prohibited.

[4]  In reaching this conclusion, we adopt the reasoning of the Seventh Circuit in *Boim*, 291 F.3d at 1015, that the term "material"

> relates to the type of aid provided *rather than whether it is substantial or considerable*. . . . Congress' goal of cutting off funding for terrorism would be seriously compromised if terrorist organizations could avoid liability by simply pooling together small donations to fund a terrorist act.

(Emphasis added.)

23 I&N Dec. at 945 (observing that "Congress has not expressly indicated its intent to provide an exception for contributions which are de minimis").

The Third Circuit has defined "material support" as anything that has a "logical connection" to the aims of the terrorist organization, but the act need not be done for the specific purpose of aiding in a terrorist act. *Singh-Kaur*, 385 F.3d at 298–301; *see also Black's Law Dictionary* 1066 (9th ed. 2009) (defining "material" as "[h]aving some logical connection with the consequential facts"). We agree that Congress intended to use the adjective "material" in a relational sense—that is, to denote a necessary logical relationship between an act and a forbidden consequence. Thus, we conclude that an alien provides "material support" to a terrorist organization, regardless of whether it was intended to aid the organization, if the act has a logical and reasonably foreseeable tendency to promote, sustain, or maintain the organization, even if only to a de minimis degree.

Our view that the phrase "material support" has no quantitative component is also borne out by the fact that Congress, through section 212(d)(3)(B)(i) of the Act, has conferred upon the Secretary of Homeland Security the authority to grant a waiver regarding the application of the material support bar in order to address excusable violations including, among other things, support provided under duress or to only a de minimis degree. *See, e.g.*, *Annachamy v. Holder*, 733 F.3d 254, 261–64 (9th Cir. 2013), *overruled on other grounds by Abdisalan v. Holder*, 774 F.3d 517, 526 (9th Cir. 2014) (as amended Jan. 6, 2015); *Barahona v. Holder*, 691 F.3d 349, 354–55 (4th Cir. 2012). As relevant here, the DHS has construed the waiver to apply specifically in situations where an alien has afforded only "insignificant material support" to an undesignated terrorist organization, a member of such an organization, or an individual the applicant knew, or reasonably should have known, had committed or planned to commit a terrorist activity. Exercise of Authority Under Section 212(d)(3)(B)(i) of the Immigration and Nationality Act, 79 Fed. Reg. 6913, 6913 (Feb. 5, 2014).[5]

In *Matter of S-K-*, 23 I&N Dec. at 941, we noted that the inclusion of the waiver was a means of balancing the "harsh provisions" of the material support bar. By creating the waiver, Congress effectively addressed the over-inclusive nature of the bar by allowing the Secretary to consider each

---

[5]   The DHS has also determined that the waiver applies to "an alien who provided limited material support . . . that involves (1) certain routine commercial transactions or certain routine social transactions . . . , (2) certain humanitarian assistance, or (3) substantial pressure that does not rise to the level of duress." Exercise of Authority Under Section 212(d)(3)(B)(i) of the Immigration and Nationality Act, 79 Fed. Reg. 6914, 6914 (Feb. 5, 2014). Thus, the waiver is available to cover the kinds of activities that the dissent argues should not be considered to be "material support," such as providing water or medical care.

situation in a more holistic manner.  *See Sesay*, 787 F.3d at 223 n.8 (noting that in recent years, the Secretaries of State and Homeland Security have continued to expand the categories of activities eligible for waiver).[6]

Obviously, if providing merely an "insignificant" amount of support did not constitute "material support," the DHS would not have found a need for a waiver addressing this type of circumstance.  The fact that the waiver covers such situations is clear evidence that the DHS regards the bar as extending to the provision of even "insignificant" support, contrary to the contention of the respondent and the dissent.  While the DHS's position is not binding on either the Board or the Federal courts, it is nevertheless entitled to some weight.  *See Davis v. United States*, 495 U.S. 472, 484 (1990); *Udall v. Tallman*, 380 U.S. 1, 16 (1965).  Thus, regardless of how sympathetic the circumstances of an alien's case may be, we find no support for concluding that Congress intended to provide a quantitative exclusion from the term "material support."  *See generally Matter of C-T-L-*, 25 I&N Dec. 341, 345 (BIA 2010) (stating that we do not generally view statutory language in isolation, but must read the words "in their context and with a view to their place in the overall statutory scheme" (citations omitted)).

We therefore conclude that, on the facts before us, the respondent afforded material support when she aided guerillas in continuing their mission of armed and violent opposition to the Salvadoran Government in

---

[6]  Implementation of the section 212(d)(3)(B)(i) material support exemption has been delegated from the Secretaries to the U.S. Citizenship and Immigration Services ("USCIS") in consultation with the U.S. Immigration and Customs Enforcement ("ICE").  *See* Exercise of Authority Under Sec. 212(d)(3)(B)(i) of the Immigration and Nationality Act, 72 Fed. Reg. 9955, 9955 (Mar. 6, 2007).  The DHS announced that USCIS, in consultation with ICE, will consider a case for an exemption only after an order of removal is administratively final.  *See Fact Sheet: Department of Homeland Security Implements Exemption Authority for Certain Terrorist-Related Inadmissibility Grounds for Cases with Administratively Final Orders of Removal*, USCIS (Oct. 23, 2008), https://www.uscis.gov/sites/default/files/USCIS/Laws/TRIG/USCIS_Process_Fact_Sheet_-_Cases_in_Removal_Proceedings.pdf.  After an administratively final order is issued, ICE will forward to USCIS those cases where relief or protection was denied solely on the basis of one of the terrorist-related inadmissibility grounds for which exemption authority has been exercised by the Secretary.  *Id.*  Pursuant to the Secretaries' exercise of authority under section 212(d)(3)(B)(i) of the Act, "USCIS will consider whether certain aliens are eligible for and warrant a discretionary exemption for the provision of the following types of certain limited material support:  certain routine commercial transactions; certain routine social transactions; certain humanitarian assistance; or material support provided under sub-duress pressure."  USCIS Policy Memorandum, PM-602-0112, 2015 WL 2439341 (May 8, 2015) (regarding "Implementation of the Discretionary Exemption Authority under Section 212(d)(3)(B)(i) of the Immigration and Nationality Act for the Provision of Certain Limited Material Support").  We emphasize that the DHS adjudicates section 212(d)(3)(B)(i) waivers only as a last resort, when it is clear that the terrorism bar is the *sole* ground for an alien's removability or ineligibility for relief.

1990.  *See Humanitarian Law Project*, 561 U.S. at 28–29 (citing Congress' finding that any "contribution" to a terrorist organization facilitates terrorist activity and holding that such a "contribution" is not limited to monetary aid); *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1136 (9th Cir. 2000) (stating that "giving support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts"); *Matter of S-K-*, 24 I&N Dec. at 477–78 (reaffirming *Matter of S-K-*, 23 I&N Dec. at 944–46).  While the respondent's assistance may have been relatively minimal, if she had not provided the cooking and cleaning services she was forced to perform, another person would have needed to do so.

The dissent, in addition to arguing that the amount of support afforded by an alien to a terrorist organization must reach a certain level to be considered "material," asserts that the support provided must be of a certain type in order to be covered by the material support bar.  We find this issue, which was not raised by the respondent, to be relatively straightforward.

In several nonprecedential decisions, some of which have been reviewed by the Federal courts of appeals, we have found that "material support" includes activities, both voluntary and involuntary, such as fundraising, making payments of money, providing food and shelter, and performing physical labor.  *See, e.g.*, *Tahir v. Lynch*, 654 F. App'x 512, 515 (2d Cir. 2016) (designing and printing communications materials, such as brochures, posters, and banners); *Annachamy*, 733 F.3d at 257 (making a monetary contribution and performing physical labor); *Barahona*, 691 F.3d at 351 (allowing the use of a home for shelter and meal preparation); *Haile v. Holder*, 658 F.3d 1122, 1124 (9th Cir. 2011) (fundraising and supplying provisions and secret documents); *Singh-Kaur*, 385 F.3d at 294 (providing food and shelter).  The term is broadly defined and is not limited to the enumerated examples in the statute under section 212(a)(3)(B)(iv)(VI) of the Act.  *See, e.g.*, *Alturo v. U.S. Att'y Gen.*, 716 F.3d 1310, 1314 (11th Cir. 2013) (per curiam) (citing *Singh-Kaur*, 385 F.3d at 298–99).

The dissent nevertheless asserts that, although not an exclusive list, the acts enumerated in section 212(a)(3)(B)(iv)(VI) of the Act imply that only certain kinds of support qualify as "material."[7]  This argument is refuted by the above-cited examples.  Moreover, as we have noted, the examples of types of material support listed in the statute are not exhaustive but are "intended to illustrate a broad concept rather than narrowly circumscribe a term with exclusive categories." *Matter of S-K-*, 23 I&N Dec. at 944 (quoting *Singh-Kaur*, 385 F.3d at 298).  We have further observed that the court in

---

[7]  Section 212(a)(3)(B)(iv)(VI) identifies acts that afford material support as "including" the following:  "a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training."

*Singh-Kaur* "rejected the alien's arguments that because a similar statute criminalizing such support to terrorists included a longer list of examples, including lodging, congressional intent was to limit the types of support that would qualify to those listed." *Id.*

In fact, no court has held that the kind of support an alien provides, if related to promoting the goals of a terrorist organization, is exempt from the material support bar, and we discern no basis to import such a limitation. Indeed, the Supreme Court has stated that even "[m]aterial support meant to 'promot[e] peaceable, lawful conduct' can further terrorism by foreign groups in multiple ways." *Humanitarian Law Project*, 561 U.S. at 30 (alteration in original) (citation omitted).

The dissent invokes the canon of ejusdem generis, which provides that when "general words in a statute follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." *Matter of L-*, 9 I&N Dec. 14, 21 (BIA 1960).[8] But canons of statutory construction are merely general guides and should not be applied where the context dictates otherwise. *See, e.g.*, *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007); *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932). Here, Congress has considered that combatting terrorism is a high priority and that any contributions to terrorist organizations further their terrorism. *See Humanitarian Law Project*, 561 U.S. at 28–32. The context therefore plainly counsels against a limitation being placed on the type of support rendered by an alien.

Because the material support bar applies, we will dismiss the respondent's cross-appeal. As noted, the Immigration Judge determined that, but for the "material support" bar, the respondent would have been eligible for asylum on humanitarian grounds under *Matter of Chen*, 20 I&N Dec. 16. The DHS does not dispute this finding. For the reasons enumerated by the Immigration Judge, we agree.

## C. Convention Against Torture

The DHS argues that the Immigration Judge erred by granting the respondent's application for deferral of removal under the Convention Against Torture because the respondent did not demonstrate that it is more likely than not that she will be tortured if removed to El Salvador. Our review of the Immigration Judge's decision reflects that she has not provided sufficient fact-finding and analysis regarding the respondent's request for protection under the Convention Against Torture. We cannot meaningfully

---

[8]   We declined to apply the doctrine ejusdem generis in *Matter of L-* where only specific terms were used and were not accompanied by any general term.

address the DHS's arguments absent sufficient legal analysis by the Immigration Judge or adequate factual findings, which we are without authority to make in the first instance. *See Matter of S-H-*, 23 I&N Dec. 462, 463 (BIA 2002) (remanding to the Immigration Judge because of insufficient factual findings and legal analysis); *Matter of A-P-*, 22 I&N Dec. 468, 477 (BIA 1999) (stating that the Immigration Judge is "responsible for the substantive completeness of the decision").

It is also unclear whether the Immigration Judge applied the correct legal standard in assessing the merits of the respondent's claim for protection under the Convention Against Torture. Such relief is available only if it is more likely than not that an individual will suffer from torture "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (2018); *see also Khouzam v. Ashcroft*, 361 F.3d 161, 170–71 (2d Cir. 2004) (noting that an applicant for protection under the Convention Against Torture must show that torture will be perpetrated with a government official's consent, acquiescence, or willful blindness).

The Immigration Judge's analysis was conclusory, stating only that the respondent met her burden to show that she was subject to torture and that deferral of removal was warranted. Under these circumstances, we conclude that a remand is necessary for the Immigration Judge to provide factual and legal analyses for her decision. Upon remand, the Immigration Judge may conduct further proceedings, as appropriate, and give the parties an opportunity to supplement the record with additional relevant evidence and argument. She should issue a new decision taking into consideration the totality of all the evidence presented in this matter. In remanding, we offer no opinion as to the ultimate outcome in this case.

**ORDER:** The respondent's cross-appeal is dismissed.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING AND DISSENTING OPINION*: Linda S. Wendtland, Board Member

I concur with the majority to the extent that it holds that the record should be remanded for further proceedings and the entry of a new decision with regard to the respondent's eligibility for protection under the Convention Against Torture.

However, I respectfully dissent from the majority's conclusion that the respondent is subject to the bar to asylum and withholding of removal for

applicants who have provided "material support" to a terrorist organization, and I would sustain the respondent's cross-appeal in that regard. *See* sections 208(b)(2)(A)(v), 212(a)(3)(B)(i)(I), (iv)(VI), 237(a)(4)(B), 241(b)(3)(B)(iv) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(2)(A)(v), 1182(a)(3)(B)(i)(I), (iv)(VI), 1227(a)(4)(B), 1231(b)(3)(B)(iv) (2012).

The primary question presented by this case is whether the respondent's activities are of the kind and magnitude that would meet the threshold requirement of "material." I would conclude that they are not.

To prevent Congress' use of the word "material" from being superfluous, that word must have an independent meaning. Had Congress intended the word "material" to add little or nothing to the threshold requirements, it presumably would have simply prohibited "support." Far from having done so, Congress went into detail about the kinds of activities that the general term "material support" entails. Specifically, section 212(a)(3)(B)(iv)(VI) of the Act states that "material support" includes "a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training."

Admittedly, this is not an exclusive list. Nevertheless, the listed specific examples imply that certain kinds and levels of support are required in order to constitute "material" support. *See Matter of S-K-*, 23 I&N Dec. 936, 945 (BIA 2006) (acknowledging that the respondent's "argument that 'material' should be given independent content is by no means frivolous," but finding it unnecessary to resolve the issue), *remanded*, 24 I&N Dec. 289 (A.G. 2007), *clarified*, 24 I&N Dec. 475 (BIA 2008). It is a well-settled canon of statutory construction that general statutory terms like "material support" "should be understood to refer to items belonging to *the same class* that is defined by the more specific terms in the list." *Holder v. Hall*, 512 U.S. 874, 917 (1994) (emphasis added); *see also Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (concluding that the use of the word "including" in a statutory definition conveys that other kindred items may be included within that definition, even if the items are not explicitly listed).[1]

I cannot conclude that the menial and incidental tasks that the respondent performed—as a slave—for Salvadoran guerrillas, including cooking, cleaning, and washing clothes, are of "the same class" as the enumerated forms of assistance set forth in the statute. The enumerated examples all involve items that either can directly be used to plan or carry

---

[1] The majority cites *Matter of L-*, 9 I&N Dec. 14 (BIA 1960), as having rejected the use of the doctrine of ejusdem generis where only specific terms were listed and no general term accompanied them. In this case, however, the statute does use a general term, namely, "material support." Thus, *Matter of L-* does not support the majority's holding.

out terrorist activities or, in the case of funds, have the liquidity and fungibility to readily be diverted to such use. Cooking and cleaning services for individuals who happen to belong to a terrorist organization cannot validly be placed in the same category as items that can be used to plan and carry out the organization's goals. If Congress had intended to include such incidental services in the definition of "material support," there would have been no need—and, indeed, it would have been counterproductive—to list multiple specific examples that relate directly to terrorist activity.

Similarly, I cannot conclude that the incidental assistance the respondent afforded to the guerillas provides "material" support in the logical sense of having at least some importance to promoting, sustaining, or maintaining the organization's goals. *See Haile v. Holder*, 658 F.3d 1122, 1129 (9th Cir. 2011) (concluding that the definition of "material support" was broad enough to include collecting funds, supplying provisions, and passing along secret documents (citing *Matter of S-K-*, 23 I&N Dec. at 943)). "A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). I do not believe, as the majority apparently does, that Congress intended that any support—no matter how small, dissimilar to the statutorily enumerated examples, or indeed immaterial— would bar an asylum applicant from relief. The majority's apparent interpretation of "material," as referencing anything and everything that "another person would have needed to do" if the respondent had not done it, is without effective limits and would lead to absurd results. *Matter of A-C-M-*, 27 I&N Dec. 302, 310 (BIA 2018).

For example, under the majority's strained interpretation, providing a glass of water to a thirsty individual who happened to belong to a terrorist organization would constitute material support of that organization, because the individual otherwise would have needed to obtain water from another source. Providing medical care to a flu-stricken member of a terrorist organization would also qualify as material support, since the individual otherwise would have needed to seek help from another doctor. Myriad other everyday activities that involve the crossing of paths with individuals who happen to be members of terrorist organizations would also be covered, such as selling such a member groceries on the same terms as are applied to the public generally, or cooking breakfast or doing laundry for one's spouse who is a member. All of these examples, like the majority's application of the bar to the minimal and menial activities in which the respondent has engaged, essentially read the word "material" out of the statute and render it superfluous, an outcome with which I cannot agree. *See, e.g., Dole Food Co.*

*v. Patrickson*, 538 U.S. 468, 476–77 (2003) (declining to construe a "statute in a manner that is strained and, at the same time, would render a statutory term superfluous"); *Singh-Kaur v. Ashcroft*, 385 F.3d 293, 298 (3d Cir. 2004).

In view of our relatively recent holding in *Matter of M-H-Z-*, 26 I&N Dec. 757 (BIA 2016), that the material support bar contains no exception for duress, "it is especially important to give meaning to the statutory limit of 'material.' That term calls for [I]mmigration [J]udges, the Board, and the courts to strike a balance written into the Act." *Jabateh v. Lynch*, 845 F.3d 332, 348 (7th Cir. 2017) (Hamilton, J., concurring in part and concurring in the judgment). Individuals arriving in this country from "some of the most dangerous and chaotic places on earth . . . may not have been able to avoid all contact with terrorist groups and their members, but we should not interpret the statute to exclude on this basis those who did not provide 'material' support to them," since "[m]any deserving asylum-seekers could be barred otherwise." *Id.* Unlike the majority, which apparently would apply the bar without any meaningful limit, I would not decline to carry out our responsibility to strike the foregoing critical balance.

Nor do I believe that Congress intended to relegate the respondent, who did not afford support that qualifies as "material," to the statutory waiver process under section 212(d)(3)(B)(i) of the Act, which is intended only for those individuals whose support did meet the threshold materiality requirement.[2] And given my view that the respondent's conduct does not come within the "material support" bar in the first place, I need not reach the question whether the respondent reasonably should have known that the guerrillas in 1990 in El Salvador were a terrorist organization.

---

[2] Notably, under section 212(d)(3)(B)(i) of the Act, the determination whether to waive the "terrorist" bar's applicability to an alien in removal proceedings comes within the sole unreviewable discretion of the Secretary of Homeland Security (after consultation with the Secretary of State and the Attorney General). However, a court with jurisdiction over a final order of removal entered against an alien may conduct a limited review of constitutional claims and questions of law. Section 242(a)(2)(D) of the Act, 8 U.S.C. § 1252(a)(2)(D) (2012).