# Matter of M-H-Z-, Respondent

*Decided June 9, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The "material support bar" in section 212(a)(3)(B)(iv)(VI) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(3)(B)(iv)(VI) (2012), does not include an implied exception for an alien who has provided material support to a terrorist organization under duress.

FOR RESPONDENT: Anne Pilsbury, Esquire, Brooklyn, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Anne Gannon, Senior Attorney

BEFORE: Board Panel: GUENDELSBERGER and MALPHRUS, Board Members; GELLER, Temporary Board Member.

GELLER, Temporary Board Member:

This case was last before us on May 24, 2010, when we dismissed the respondent's appeal from an Immigration Judge's July 28, 2006, decision. We agreed with the Immigration Judge that the respondent was barred from seeking relief from removal based on her claim of past persecution because she had committed an act that she knew or reasonably should have known afforded material support to a terrorist organization. On September 8, 2014, the United States Court of Appeals for the Second Circuit remanded the case for us to determine whether the statutory bar contains an implied exception for material support that was supplied under duress. *Hernandez v. Holder*, 579 F. App'x 12 (2d Cir. 2014). Both parties have filed briefs in response to the Second Circuit's remand order. Upon consideration of this question, we conclude that there is no duress exception to the "material support bar." The respondent's appeal will again be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Colombia who entered the United States in 2001 as a nonimmigrant visitor and subsequently sought asylum. The basic facts of her case are not in dispute. The respondent bases her claim for relief on her fear of the Revolutionary Armed Forces of

Colombia ("FARC") in Colombia. She was a successful businesswoman who owned a hotel and a store in the town of El Bordo. In the early 1990's she began receiving notes and messages from the FARC demanding goods and money. After the FARC made a number of threats, the respondent acceded to the demands and began to provide merchandise from her store. Every 3 months from 1997 to early 1999, she supplied foodstuffs and other products that the FARC requested. She also housed government officials at her hotel, which she believes resulted in more serious threats being made in 1999. On March 7, 2000, the FARC attacked El Bordo, and her store and hotel were destroyed.

The respondent was admitted to the United States on June 22, 2001, and applied for asylum in 2002. On August 22, 2002, the Department of Homeland Security ("DHS") issued a notice to appear, charging the respondent with removability as an overstayed nonimmigrant.

At a hearing before the Immigration Judge, the respondent conceded removability and applied for asylum and withholding of removal under sections 208(a)(1) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a)(1) and 1231(b)(3)(A) (2000). She also applied for withholding of removal and deferral of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The Immigration Judge denied her applications for asylum and for withholding of removal under the Act and the Convention Against Torture, finding that the respondent was barred from relief because she had committed an act that she knew or reasonably should have known afforded material support to a terrorist organization. The Immigration Judge also determined that the respondent had not established eligibility for deferral of removal under the Convention Against Torture pursuant to 8 C.F.R. § 1208.17 (2006).

On appeal, we agreed with the Immigration Judge that the respondent was subject to the mandatory material support bars to asylum and withholding of removal in sections 208(b)(2)(A)(v) and 241(b)(3)(B)(iv) of the Act and to withholding of removal under the Convention Against Torture pursuant to 8 C.F.R. § 1208.16(d)(2) (2010). We also agreed with the Immigration Judge that the respondent had not established eligibility for deferral of removal under the Convention Against Torture. However, we remanded the record for the Immigration Judge to make an explicit determination whether, in the absence of the material support bar, the respondent would otherwise be eligible for relief, which would allow her to request a discretionary waiver of the material support bar from the DHS.

In a decision dated December 13, 2010, the Immigration Judge held that, but for the material support bar, the respondent would be eligible for asylum based on her past persecution by the FARC.[1] The respondent filed a petition for review with the Second Circuit, which issued a summary order granting the respondent's petition in part and denying it in part. In particular, the court agreed that the support the respondent provided to the FARC was "material" because it aided the terrorist organization in its fight against the Colombian Government and that this support was not de minimis. Therefore the question whether the respondent provided material support to a terrorist organization is no longer at issue. However, the Second Circuit has remanded for us to determine whether the statute contains an implied exception to the material support bar for aliens whose support was supplied under duress.

## II. ISSUE

The question before us is whether the "material support bar" in section 212(a)(3)(B)(iv)(VI) of the Act, 8 U.S.C. § 1182(a)(3)(B)(iv)(VI) (2012), includes an implied exception for an alien who has provided material support to a terrorist organization under duress.

## III. ANALYSIS

The respondent has not challenged the Immigration Judge's factual findings regarding the circumstances surrounding her support to the FARC, but she argues that she was not accountable for her actions because she was under duress, namely the threat of death. She therefore asserts that she should be exempt from the provisions of the "material support bar." We disagree.

Section 212(a)(3)(B)(iv)(VI) of the Act defines the term "engage in terrorist activity" to include a person who

> commit[s] an act that the actor knows, or reasonably should know, *affords material support*, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training [to a terrorist organization or for a terrorist activity.]

(Emphasis added.) An alien who has engaged in terrorist activity is inadmissible under section 212(a)(3)(B)(i)(I) of the Act and is barred from

---

[1] The DHS has not appealed that determination by the Immigration Judge.

establishing eligibility for asylum and for withholding of removal under the Act and the Convention Against Torture. Sections 208(b)(2)(A)(v), 241(b)(3)(B)(iv) of the Act; 8 C.F.R. § 1208.16(d)(2); *see also Matter of S-K-*, 24 I&N Dec. 289, 290 (A.G. 2007; BIA 2006). Thus, under these provisions, any alien who has provided material support to a terrorist organization is subject to the "material support bar." *Ay v. Holder*, 743 F.3d 317, 319 (2d Cir. 2014). However, a question remains whether the bar includes an exception for aliens whose support was provided under duress.

The Federal circuit courts that have addressed this issue in a precedent decision have all held that the material support bar does not include an implied exception for aliens who provided material support to a terrorist organization under duress. *See Sesay v. Att'y Gen. of U.S.*, 787 F.3d 215, 224 (3d Cir. 2015) (holding that "the material support bar does not distinguish between voluntary and involuntary support"); *Annachamy v. Holder*, 733 F.3d 254, 267 (9th Cir. 2013) (stating that "the material support bar does not include an implied exception for individuals . . . who provide support under duress"), *overruled on other grounds by Abdisalan v. Holder*, 774 F.3d 517, 526 (9th Cir. 2014); *Alturo v. U.S. Att'y Gen.*, 716 F.3d 1310, 1314 (11th Cir. 2013) (finding that because the material support bar contains no express duress exception, the Board reasonably declined to recognize one, and noting that "every circuit that has addressed the issue has concluded that there is no implied exception to the material support bar for support given involuntarily or under duress"); *Barahona v. Holder*, 691 F.3d 349, 355 (4th Cir. 2012) ("Put simply, the terms of the Material Support Bar encompass both voluntary and involuntary support and, like those of the Crewman Bar, fail to provide for the [duress] exception under which Barahona seeks relief."). However, the Second Circuit has remanded for us to decide the question "in the first instance in light of [our] own expertise." *Ay*, 743 F.3d at 320 (quoting *Negusie v. Holder*, 555 U.S. 511, 517 (2009)).

As the Second Circuit observed in *Ay*, the Supreme Court addressed the question whether the "persecutor bar" contains a duress exception in *Negusie*, 555 U.S. at 518, and determined that statutory silence with respect to duress is not conclusive of the issue.[2] According to the Second Circuit, "Like the provision addressed in *Negusie*, the plain language of the material

---

[2] In *Negusie*, the Supreme Court considered whether the "persecutor bar" in sections 208(b)(2)(A)(i) and 241(b)(3)(B)(i) of the Act prohibits a grant of asylum or withholding of removal to a refugee who was compelled against his will by credible threats of death or torture to assist or participate in acts of persecution. Whether a duress exception applies to the persecutor bar is distinct from the issue we address in this case.

support bar is inconclusive as to whether a duress exception is implicit in its terms; the statute is silent on the question." *Ay*, 743 F.3d at 320.

Because the statute is unclear in this respect, we look to "the language and design of the statute as a whole" to determine its legislative purpose. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). In this regard, we note that the statute renders inadmissible any alien "who is or has been a member of or affiliated with the Communist or any other totalitarian party," but Congress created an explicit exception for an alien who establishes that "the membership or affiliation is or was involuntary." Section 212(a)(3)(D)(i)−(ii) of the Act. It is a well-known canon of statutory construction that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). If Congress intended to make involuntariness or duress an exception for aliens who provided material support to a terrorist organization, it would reasonably be expected to have enacted a provision similar to that in section 212(a)(3)(D)(ii) of the Act. *See Sesay*, 787 F.3d at 222−23; *Annachamy*, 733 F.3d at 260; *Alturo*, 716 F.3d at 1314.[3]

The assertion that a duress defense should be read into the material support bar in section 212(a)(3)(B)(iv)(VI) of the Act is also undermined by the fact that Congress has created a waiver for deserving aliens to avoid the consequences of the bar.[4] Specifically, the waiver provision at section 212(d)(3)(B)(i) of the Act provides in pertinent part:

---

[3] The courts have also noted that Congress's explicit exception to the material support provision in section 212(a)(3)(B)(iv)(VI)(dd) of the Act for aliens who demonstrate a lack of knowledge that the organization was a terrorist organization "is some indication that it would have likewise expressly excepted involuntary support if it intended to do so." *Annachamy*, 733 F.3d at 260; *see also Sesay*, 787 F.3d at 222.

[4] Although the waiver provision was enacted well after the material support bar, it is evidence of earlier congressional intent. *Annachamy*, 733 F.3d at 262 n.8. The waiver's significance is reflected in Congress's subsequent addition of annual reporting requirements with respect to the number of duress waivers sought and the factors to be considered when evaluating them. *See id.* at 263. Moreover, Congress demonstrated its ability to distinguish between voluntary and involuntary conduct by adding a provision preventing aliens who voluntarily supported or received training from certain terrorist organizations from obtaining a waiver. *See Sesay*, 787 F.3d at 223−24 ("Given that the 2007 Amendments discussed duress waivers and voluntariness, and required reporting on persons removed for having provided material support under duress, Congress clearly legislated on the premise that the material support bar otherwise applied to support given under duress.").

The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that [section 212(a)(3)(B) of the Act] shall not apply with respect to an alien within the scope of that subsection [subject to various specified exceptions].[5]

We previously addressed this waiver in *Matter of S-K-*, 23 I&N Dec. 936, 941 (BIA 2006), where we held that there is no exception to the material support bar for the use of justifiable force against an illegitimate regime. We stated there that the inclusion of the waiver was a means of balancing the harsh provisions of the material support bar and an indication that Congress's omission of ameliorative provisions in section 212(a)(3)(B) of the Act was intentional.

Congress's enactment of the waiver similarly indicates that the omission of any duress exception was intentional. Thus, as we noted in *Matter of S-K-*, the only remedy for an alien who has provided material support to a terrorist organization "appears to lie in the waiver afforded by Congress for this purpose." *Id*. at 942. Congress's decision to provide a waiver, but to allow no exception for involuntariness or duress, should therefore be given

---

[5]   The Immigration Judges and the Board do not have the authority to adjudicate this discretionary waiver, which was accorded to the Secretary of State to exercise prior to the initiation of removal proceedings and to the Secretary of Homeland Security to exercise at any time, but only upon consultation with the Attorney General. The United States Citizenship and Immigration Services ("USCIS") issued a fact sheet describing the process by which the Secretary of Homeland Security exercises the authority to grant a waiver. *See* USCIS Fact Sheet, "Department of Homeland Security Implements Exemption Authority for Certain Terrorist-Related Inadmissibility Grounds for Cases with Administratively Final Orders of Removal" (Oct. 23, 2008), https://www.uscis.gov /sites/default/files/USCIS/News/Pre-2010%20-%20Archives/2008%20Press%20Releases /Oct%2008/DHS_implements_exempt_auth_certain_terrorist_inadmissibility.pdf. This guidance indicates that the Secretary has given the USCIS authority, in consultation with U.S. Immigration and Customs Enforcement, to grant such waivers on a case-by-case basis to aliens who fall within particular categories of cases.

For the USCIS to consider granting such a waiver, it must first be shown that the alien is seeking an immigration benefit or protection for which he or she has been determined to be otherwise eligible. *See* Interoffice Memorandum from Jonathan Scharfen, Deputy Dir., Office of the Dir., to DHS officials (May 24, 2007), https://www.uscis.gov/sites/ default/files/files/pressrelease/MaterialSupport_24May07.pdf. Therefore, consistent with this waiver scheme, Immigration Judges should ordinarily determine first whether an alien is otherwise eligible for the benefit or protection sought. Only if it is determined that the alien is otherwise eligible would it be necessary or appropriate to consider whether the material support bar applies.

deference.[6]  *See Annachamy*, 733 F.3d at 264 (stating that "we should defer to Congress' chosen method to try to strike the correct balance between the United States' humanitarian obligations and national security").

According to the respondent, a conclusion that no duress exception to the material support bar exists would necessarily lead to results that are inconsistent with our treaty obligations, including the duty of nonrefoulement.  While we agree that the provisions of the Act should generally be read consistently with our international obligations to the extent they are not in conflict with governing law, we are not persuaded that any inconsistency exists here.  *See Annachamy*, 733 F.3d at 266 (observing that under international law, "Congress is free to decide that an alien who provided material support to a terrorist organization, even if under duress, is a danger to the security of the United States"); *Khan v. Holder*, 584 F.3d 773, 784 (9th Cir. 2009) (stating that the definition of "terrorist activity" in the Act "not only does not violate the [1967 United Nations Protocol Relating to the Status of Refugees], but adheres to its specific non-refoulement exception").[7]

The respondent also asserts that because duress may be a defense to negate culpability in the criminal context, an exception for duress should similarly apply to the material support bar.  We find this argument to be misplaced because, unlike criminal proceedings, immigration proceedings are civil in nature.  *See, e.g.*, *Negusie v. Holder*, 555 U.S. at 526 (Scalia, J., concurring) (stating that the duress defense in criminal cases is inapplicable to the interpretation of the asylum statute's persecutor bar, because an "order of deportation is not a punishment for a crime") (quoting *Fong Yue Ting v. United States*, 149 U.S. 698, 730 (1893)).  *See generally Mehboob v. Att'y Gen. of U.S.*, 549 F.3d 272, 277 n.3 (3d Cir. 2008) (stating that immigration statutes need not "encompass separate statutory or common law defenses that are available to a criminal defendant"); *Dor v. District Director, INS*, 891 F.2d 997, 1003 (2d Cir. 1989) (observing that a deportation proceeding "is not a criminal proceeding . . . and the full trappings of legal protections that are accorded to criminal defendants are

---

[6]   The Second Circuit expressed concern about the lack of any "published process" for seeking a waiver when discussing its reasons for remanding in *Ay*, 743 F.3d at 321.  However, the efficacy of the administration of the waiver does not bear on Congress's intent and is a matter outside of our authority.

[7]   Our treaty obligations under the Convention Against Torture are different from those implicated in our assessment of the material support bar to asylum and withholding of removal under the Act.  The material support bar does not preclude deferral of removal under the Convention Against Torture pursuant to 8 C.F.R. § 1208.17.  However, we previously affirmed the Immigration Judge's denial of such protection in this case, and the respondent has not further challenged that aspect of the Immigration Judge's decision.

not necessarily constitutionally required in deportation proceedings"). Moreover, the argument that a duress exception must necessarily be implied is undercut by the fact that, even in criminal cases, duress is not always a defense. *See Annachamy*, 733 F.3d at 260 n.6 (stating that the criminal law concept of "duress does not excuse the majority of acts listed in the definition of 'terrorist activity,'" such as murder).

In drafting the terrorism bar for providing material support, Congress gave no indication that it intended to narrow the statutory definition by including an implied exception for duress or coercion. *See Matter of S-K-*, 23 I&N Dec. at 941 (finding that "Congress intentionally drafted the terrorist bars to relief very broadly, . . . and it did not intend to give us discretion to create exceptions"). Accordingly, we hold that the material support bar in section 212(a)(3)(B)(iv)(VI) of the Act includes no exception for duress. *See Sesay*, 787 F.3d at 224 ("To read the statute in any other way . . . would contravene unambiguous legislative intent."). Therefore, absent a waiver, an alien who affords material support to a terrorist organization is inadmissible and statutorily barred from establishing eligibility for asylum and for withholding of removal under the Act and the Convention Against Torture, even if such support was provided under duress.

The Second Circuit has affirmed our determination that the respondent "provided material support to a terrorist organization" based on her credible testimony that she supplied goods to the FARC. Because Congress did not include an implied duress exception to the material support bar, we agree with the Immigration Judge that the respondent is barred from eligibility for relief from removal, even though she established that she did not *voluntarily* provide material support to the FARC. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.