Dennis Jacobs, Circuit Judge:
*109 Petitioner Marleny Hernandez, a native and citizen of Colombia, seeks review of a June 9, 2016 published decision of the Board of Immigration Appeals ("BIA") finding her ineligible for asylum on the ground that she provided "material support" to a terrorist organization, notwithstanding that she acted under duress. See Matter of M-H-Z-, 26 I. & N. Dec. 757 (B.I.A. 2016).
The Immigration and Nationality Act ("INA") deems ineligible for asylum any alien who has "engaged in a terrorist activity." 8 U.S.C. §§ 1158(b)(2)(A)(v), 1182(a)(3)(B)(i)(I). In a provision known as the "material support bar," the INA defines "[e]ngag[ing] in [a] terrorist activity" to include committing an act that "the actor knows, or reasonably should know, affords material support" to a terrorist organization. Id. § 1182(a)(3)(B)(iv)(VI). A 2014 Summary Order of this court identified no error in the BIA's conclusion that Hernandez provided material support to a terrorist organization by providing the Revolutionary Armed Forces of Colombia $100 packages of foodstuffs every three months for more than two years. See Hernandez v. Holder, 579 Fed.Appx. 12, 15 (2d Cir. 2014). But the Order remanded the matter for the BIA to determine in the first instance whether the material support bar, which makes no explicit mention of duress, nevertheless has an implied duress exception that might exempt Hernandez. See id. (citing Ay v. Holder, 743 F.3d 317, 320 (2d Cir. 2014) (explaining that the material support bar is "silent on the question" of whether "a duress exception is implicit in its terms") ). The agency decision resulting from that remand is the subject of the petition before us.
The principal question presented by the petition is whether the agency's determination that the material support bar contains no implied duress exception is entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We conclude that Chevron deference is warranted and join several other circuits in holding that the material support bar does not except aliens, like Hernandez, who acted under duress.[1] We also reject Hernandez's argument that aliens who are rendered ineligible for relief from removal by the material support bar have a due process right to some means of obtaining an exemption based on duress, other than the currently available procedure for obtaining a discretionary waiver from the Department of State or the Department of Homeland Security-a waiver that Hernandez sought but did not receive. See 8 U.S.C. § 1182(d)(3)(B)(i). Accordingly, we deny the petition.
The facts and procedural course of this case are set out in the BIA's published decision and in our 2014 Summary Order. We review only the BIA's decision issued *110 on remand. See Belortaja v. Gonzales, 484 F.3d 619, 623 (2d Cir. 2007).
I
The INA's material support bar, 8 U.S.C. § 1182(a)(3)(B)(iv)(VI), is construed by the BIA to have no implied exception for duress. When, as here, the BIA construes "the statute which it administers," we apply the familiar principles of deference outlined originally in Chevron . I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). "At the first step" of the two-step Chevron framework, we "determine whether Congress has directly spoken to the precise question at issue," and if it has, we "give effect to [Congress's] unambiguously expressed intent .... If, however, the statute [is] ambiguous ..., we proceed to a second step of analysis to [determine] whether the agency's interpretation is reasonable," and if it is, "we must defer to it." Adams v. Holder, 692 F.3d 91, 95 (2d Cir. 2012) (internal quotation marks and citations omitted).
The inquiry here begins at Chevron step two, because we have already concluded that the material support bar is ambiguous as to whether duress is an exception.[2] See Hernandez, 579 Fed.Appx. at 15 (citing Ay, 743 F.3d at 320 ). At Chevron step two, we conclude that the BIA's construction of the material support bar is reasonable and therefore entitled to Chevron deference. In doing so, we join several of our sister circuits in holding that the material support bar does not contain an implied duress exception. See Sesay v. Att'y Gen., 787 F.3d 215, 217-18 (3d Cir. 2015) ; Barahona v. Holder, 691 F.3d 349, 355-56 (4th Cir. 2012) ; Annachamy v. Holder, 733 F.3d 254, 260, 267 (9th Cir. 2013), overruled on other grounds by Abdisalan v. Holder, 774 F.3d 517 (9th Cir. 2014) (en banc); Alturo v. U.S. Att'y Gen., 716 F.3d 1310, 1314 (11th Cir. 2013).
Hernandez argues that the BIA's construction is not reasonable in view of (1) the context, purpose, and legislative history of the INA; (2) United States treaty obligations; and (3) the availability of a duress defense in criminal proceedings. For the reasons that follow, we reject these arguments.
1. The BIA reasonably determined that the nonexistence of a duress exception can be inferred from the language and design of the INA as a whole. See Adams, 692 F.3d at 95. The text of the material support bar itself is "silent" as to conduct taken under duress.[3] See Ay, 743 F.3d at 320. Elsewhere in the INA, the bar to relief from removal for members or affiliates of communist or totalitarian political parties contains an explicit exception for individuals who can establish that their "membership or affiliation is or was involuntary." 8 U.S.C. § 1182(a)(3)(D)(i)-(ii). The omission of such an express exception in the material support bar supports the inference drawn by the BIA that no exception was intended. See INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ("[W]here Congress *111 includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks and citation omitted) ). Other circuits agree. See Alturo, 716 F.3d at 1314 (observing that the lack of an explicit duress exception in the material support bar "stands in marked contrast to a neighboring provision in the INA that includes an explicit involuntariness exception for aliens who have been affiliated with a totalitarian party"); Annachamy, 733 F.3d at 261 (same); Sesay, 787 F.3d at 222-23 (same).[4]
The BIA likewise relied on the separate INA provision under which an alien who "has not 'voluntarily and knowingly' supported terrorist activities" may apply for a discretionary "waive[r] [ ] of the material support bar" from "the Secretary of State or [ ] the Secretary of Homeland Security"-a waiver that requires inter-agency consultation.[5] Ay, 743 F.3d at 321 (emphasis added) (quoting 8 U.S.C. § 1182(d)(3)(B)(i) ). In enacting that provision-"well after [enacting] the material support bar"-"Congress demonstrated its ability to distinguish between voluntary and involuntary" conduct in the INA. Matter of M-H-Z-, 26 I. & N. Dec. at 761 n.4 ; see also Sesay, 787 F.3d at 223-24 ("Given that the 2007 Amendments discussed duress waivers and voluntariness, and required reporting on persons removed for having provided material support under duress, Congress clearly legislated on the premise that the material support bar otherwise applied to support given under duress."); Annachamy, 733 F.3d at 262 n.8 ("Although the waiver provision was not enacted until 15 years after the creation of the material support bar, the waiver provision is still relevant in determining the earlier congressional intent.").
2. Hernandez argues that a material support bar without an implied duress exception is incompatible with the non-refoulement obligation of the 1976 United Nations Protocol Relating to the Status of Refugees (the "Protocol"), to which the United States is a signatory. That argument appears to suggest that the Protocol is self-executing: it is not. See Yuen Jin v. Mukasey, 538 F.3d 143, 159 (2d Cir. 2008). In any event, the BIA recognized that the absence of an implied duress exception to the material support bar is consistent with the United States's obligations under the Protocol.
"The Protocol incorporates by reference Articles 2 through 34 of the [1951] United Nations Convention Relating to the Status of Refugees [ (the 'Convention') ]," Aguirre-Aguirre, 526 U.S. at 427, 119 S.Ct. 1439, and Article 33.2 of the Convention provides that non-refoulement may not "be claimed by a refugee whom there are reasonable grounds for regarding as a danger to the security of the country in which he is," Convention, art. 33.2, reprinted in 19 U.S.T. 6223. Moreover, "the determination *112 of refugee status under the 1951 Convention and the 1967 Protocol ... is incumbent upon the Contracting State in whose territory the refugee finds himself." Cardoza-Fonseca, 480 U.S. at 439 n.22, 107 S.Ct. 1207 (quoting Office of the United Nations High Commissioner for Refugees, Handbook on Procedures and Criteria for Determining Refugee Status 1 (ii) (Geneva, 1979) ). Therefore, "[u]nder the Protocol and Convention, Congress is free to decide that an alien who provided material support to a terrorist organization, even if under duress, is a danger to the security of the United States." Annachamy, 733 F.3d at 266.
3. Hernandez argues that an implied duress exception to the material support bar is compelled by the pervasive availability of duress as a defense in the criminal law. However, a deportation proceeding "is not a criminal proceeding ... [,] and the full trappings of legal protections that are accorded to criminal defendants are not [ ] constitutionally required in deportation proceedings." Dor v. Dist. Dir., INS, 891 F.2d 997, 1003 (2d Cir. 1989) (citation omitted). It was reasonable for the BIA to deem the criminal defense of duress inapposite because ineligibility for relief from removal under the material support bar is not premised on criminal liability. See Annachamy, 733 F.3d at 260 n.6 ("[An] alien's ... [acts in] support [of a] ... terrorist organization need not [give rise to] criminal[ ] liab[ility] for the material support bar to apply."); see also Negusie v. Holder, 555 U.S. 511, 526, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009) (Scalia, J., concurring) (observing that the existence of the duress defense in criminal cases is irrelevant to the interpretation of a bar to relief from removal under the INA because an "order of deportation is not a punishment for a crime" (quoting Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 37 L.Ed. 905 (1893) ) ).
II
Hernandez argues in the alternative that, given the BIA ruling, the discretionary waiver system authorized under 8 U.S.C. § 1182(d)(3)(B)(i) is the sole means by which an alien may obtain a duress exception to the material support bar, and that the government thus violates due process because that system does not afford aliens sufficient procedural safeguards. See Burger v. Gonzales, 498 F.3d 131, 134 (2d Cir. 2007).
Aliens for whom the waiver system may later become necessary still have a full and fair opportunity to have their claims for asylum or withholding of removal first heard and adjudicated by an immigration judge and the BIA, see id., and it is through that adequate process that aliens may be deemed ineligible for relief if they are found to have provided material support to terrorists, see 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). The system that Hernandez challenges "afford[s] [these aliens] additional process," Yuen Jin, 538 F.3d at 157 (emphasis added), by allowing them to make a showing of involuntariness, which the Executive may, in its "sole [and] unreviewable discretion," deem deserving of a waiver, see 8 U.S.C. § 1182(d)(3)(B)(i). However, aliens have no constitutionally-protected "liberty or property interest" in such a discretionary grant of relief for which they are otherwise statutorily ineligible. See Yuen Jin, 538 F.3d at 156-57 (collecting cases); cf. Town of Castle Rock v. Gonzales, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). There is therefore no merit to Hernandez's due process challenge to either the denial of her waiver *113 application or to the waiver system in general.
For the foregoing reasons, the petition for review is DENIED. Any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot.

While this opinion discusses the material support bar in the context of Hernandez's claim for asylum , the bar-and the interpretation of it discussed in this opinion-applies equally to claims for withholding of removal. See 8 U.S.C. §§ 1231(b)(3)(B)(iv), 1227(a)(4)(B), 1182(a)(3)(B)(i)(I), ll82(a)(3)(B)(iv)(VI).

Hernandez argues that the statutory language favors her reading unambiguously. That argument is defeated by stare decisis and law of the case.

Hernandez argues that the bar's text, which states that it applies to aliens who "commit [ ] act[s]" that provide material support to terrorists, presumes deliberate conduct. The point does not support her petition, however, because deliberate conduct may be taken under duress. See Dixon v. United States, 548 U.S. 1, 6, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006) (observing, in the criminal context, that the duress defense may excuse conduct that would otherwise be punishable for satisfying all elements of the offense).

In urging otherwise, Hernandez observes that the so-called "totalitarian bar" was enacted years before the material support bar by a different Congress. However, we "assume that Congress is aware of existing law when it passes legislation." Miles v. Apex Marine Corp., 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) (citation omitted). Indeed, presuming congressional awareness is "particularly appropriate here," because Congress updated the totalitarian bar "in the same legislation in which it created the material support bar." Annachamy, 733 F.3d at 261 n.7.

The Secretary of State may exempt an applicant after consulting with the Attorney General and the Secretary of Homeland Security, and the Secretary of Homeland Security may do so after consulting with the Attorney General and the Secretary of State. See 8 U.S.C. § 1182(d)(3)(B)(i).