*Sufiyan v. Bondi*

In the

# United States Court of Appeals

For the Second Circuit

---

August Term, 2024

(Argued: October 29, 2024     Decided: March 12, 2026)

Docket No. 22-6392

---

MOHAMED IRSHAN MOHAMED SUFIYAN,

*Petitioner*,

*v.*

PAMELA BONDI,

*Respondent*.[*]

---

Before:      KEARSE, SULLIVAN, and ROBINSON, *Circuit Judges*.

---

Petitioner Mohamed Irshan Mohamed Sufiyan, a native and citizen of Sri Lanka, seeks review of a decision of the Board of Immigration Appeals (the "BIA") affirming an immigration judge's denial of his application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of and, alternatively, deferral of removal under the Convention Against Torture ("CAT"). The BIA affirmed the immigration judge's conclusion that Sufiyan provided material support to

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have substituted current United States Attorney General Pamela Bondi for former United States Attorney General Merrick B. Garland as the respondent in this case.

the Liberation Tigers of Tamil Eelam (the "LTTE"), which is a designated foreign terrorist organization, and thus dismissed Sufiyan's appeal of the IJ's denial of his claims for asylum, statutory withholding of removal, and withholding of removal under CAT without addressing the merits of those claims for relief. The BIA upheld on the merits the IJ's denial of Sufiyan's request for deferral of removal under CAT.

By declining to reach the merits of Sufiyan's requests for asylum and statutory withholding of removal, the BIA avoided making any determination of whether Sufiyan would be eligible for such relief but for the material support bar. Without that determination, Sufiyan could not apply for a waiver of the material support bar from the relevant authorities within the Department of Homeland Security. That frustrates Congress's intent behind the applicable statutes and conflicts with the BIA's own precedent. We thus GRANT the petition for review in part and REMAND to the BIA to determine whether Sufiyan would be entitled to asylum or withholding of removal under the INA if the material support bar did not apply. We DENY Sufiyan's petition for review of the agency's denial of his request for withholding or deferral of removal under CAT.

Judge Sullivan concurs in part and dissents in part in a separate opinion.

_____

VISUVANATHAN RUDRAKUMARAN, Law Office of Visuvanathan Rudrakumaran, New York, NY, *for Petitioner*.

STEFANIE NOTARINO HENNES, Senior Counsel for National Security, National Security Unit (Brian M. Boynton, Principal Deputy Assistant Attorney General, Ethan B. Kanter, Chief, National Security Unit, Paul F. Stone, Deputy Chief, National Security Unit, Andrew C. Brinkman, Senior Counsel for National Security, *on the brief*), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent*.

2

*Piibe Jogi*, Human Rights First, New York, NY, *for Amicus Curiae Human Rights First, in support of Petitioner*.

---

ROBINSON, *Circuit Judge*:

Petitioner Mohamed Irshan Mohamed Sufiyan, a native and citizen of Sri Lanka, seeks review of a decision of the Board of Immigration Appeals (the "BIA") affirming an immigration judge's denial of his application for asylum under § 208(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(1)(A), withholding of removal under § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3) ("statutory withholding"), and relief under the Convention Against Torture ("CAT") in the form of either withholding or deferral of removal.

The BIA affirmed the immigration judge's conclusion that Sufiyan provided material support to the Liberation Tigers of Tamil Eelam (the "LTTE"), which is a designated foreign terrorist organization. On that basis, it dismissed Sufiyan's appeal of the IJ's denial of his claims for asylum, statutory withholding of removal, and withholding of removal under CAT without addressing the merits of those claims for relief. The BIA upheld the IJ's denial of his request for deferral of removal under CAT on the merits.

3

Sufiyan had expressed his intention to seek a statutory waiver of the material support bar from the United States Citizenship and Immigration Service ("USCIS") and asked the BIA to determine whether he would be eligible for relief but for the material support bar. Because the BIA did not do so, we GRANT Sufiyan's petition for review in part and REMAND to the BIA to determine whether Sufiyan would be entitled to asylum or withholding of removal under the INA if the material support bar did not apply. We DENY Sufiyan's petition for review of the agency's denial of his request for withholding or deferral of removal under CAT.

## BACKGROUND

### I. The Asserted Persecution and Torture

At a hearing on the merits of his removal proceedings, Sufiyan testified before an immigration judge ("IJ") that, in 2009, while he was driving in Sri Lanka with his boss, members of the LTTE stopped them and took over the vehicle, driving away while Sufiyan and his boss were still in the vehicle. The LTTE members drove Sufiyan and his boss into a wooded area. When his boss talked back to them, the LTTE members shot Sufiyan's boss in the leg two times and then left him bleeding. They then detained Sufiyan in a nearby house where they severely beat his roommate, a fellow captive. The LTTE members made Sufiyan

4

translate between Tamil and Sinhala during the LTTE members' interrogation of the roommate. Given that they had shot his boss, he thought they would kill him if he did not translate as requested.

After several days, the LTTE members loaded Sufiyan into a van and began driving with him. The Sri Lankan army intercepted the LTTE van and apparently believed Sufiyan was an LTTE member. The Sri Lankan army detained Sufiyan for several months, and on five or six occasions they beat him repeatedly. Eventually, he was able to get a message to his brother-in-law who facilitated his release. When officers dropped Sufiyan off near a tea shop where his brother-in-law was waiting, they told him they would kill him if he was seen alive again.

Sufiyan's brother-in-law then took him directly to Maskeliya, Sri Lanka, about six hours from his home, where he lived for roughly three and a half years without incident. In December 2012, Sufiyan began working on a ship in the United States, after obtaining a seaman visa at the United States embassy in Sri Lanka and leaving the country by air using his Sri Lankan passport. After Sufiyan worked for ten months on the ship in the United States, his brother-in-law arranged for him to return to Maskeliya for two or three months. Because he continued to fear for his safety, Sufiyan came back to the United States on January 24, 2014.

## II. IJ Proceedings

Sufiyan applied for asylum and statutory withholding of removal on May 6, 2015, roughly a year and four months after his most recent entry into the United States. He also requested relief under CAT. In support of his claims, Sufiyan testified that he feared that the Sri Lankan army would torture and kill him if he returned to Sri Lanka because they believe he is connected to the LTTE. He described the above facts and testified that he was told that Sri Lankan authorities were looking for him. He also testified that he heard from a friend that Muslim individuals who are returned to the Tamil state after seeking asylum in America, Australia, and Germany are suspected of being terrorists and are tortured and killed.

For several overlapping reasons, the IJ denied all relief and ordered Sufiyan removed to Sri Lanka.

First, the IJ concluded that Sufiyan was ineligible for asylum and withholding of removal (both statutory and under CAT) because he provided material support to the LTTE, a designated foreign terrorist organization, by providing translation services. The IJ noted that there is no "duress" exception to the material support bar.

The IJ then considered Sufiyan's specific claims for relief. As to asylum, the IJ concluded that Sufiyan's asylum application was untimely because Sufiyan filed it more than one year after his latest arrival in the United States, and that changed circumstances did not justify Sufiyan's untimely application. The IJ did not expressly consider the merits of Sufiyan's asylum claim.

As to his claim for statutory withholding of removal, the IJ found that Sufiyan had not established past persecution because he had failed to adequately corroborate his claim. And it found that his fear of future persecution was not objectively reasonable in light of the facts that Sufiyan's family had remained in Sri Lanka for many years without government persecution, and Sufiyan himself was able to come and go from Sri Lanka without difficulty, and had lived there for more than three years after he was detained by the Sri Lankan army.

Finally, citing many of the same deficiencies that justified denial of statutory withholding of removal, the IJ concluded that Sufiyan had failed to meet his burden to establish his entitlement to withholding or deferral of removal under CAT. The IJ found that Sufiyan had not suffered past torture in Sri Lanka because of a lack of corroboration and detail about the Sri Lankan army's treatment of Sufiyan while he had been briefly detained. Moreover, Sufiyan's repeated entries and exits from Sri Lanka using his own passport, in addition to three and a half

7

years of living in Maskeliya, undercut Sufiyan's contention that the Sri Lankan government was looking for him and would likely torture him. Finally, Sufiyan's documentary evidence that asylum seekers suffered torture after being returned to Sri Lanka from Australia did not overcome the other deficiencies in his case.

### III. BIA Appeal

Sufiyan appealed to the BIA, challenging the IJ's factual findings and legal analysis. Sufiyan contended (among other things) that the IJ erred by concluding that (1) Sufiyan's testimony unjustifiably lacked corroboration on several matters, including the dangers posed by the Sri Lankan government; (2) Sufiyan's credible testimony, alone, did not satisfy the burden of proof; (3) the evidence did not establish a reasonable fear of future persecution on account of a protected characteristic; (4) Sufiyan had not experienced past persecution; (5) Sufiyan did not qualify for CAT relief; and (6) changed circumstances did not justify an exception to the one-year filing deadline for asylum.

With respect to the material support bar, Sufiyan argued that it was inapplicable because his translating for LTTE members did not amount to "material" support. Certified Admin. Rec. ("CAR") at 29–30. He also argued that the IJ erred by failing to make a finding as to whether he provided the translation services under duress, and as to whether he would be eligible for relief but for the

8

material support bar. He explained, "Had the Immigration Judge made those finding[s], [he] could pursue the waiver with the USCIS." *Id.* at 29.

The BIA dismissed Sufiyan's appeal. It reasoned that Sufiyan was ineligible for asylum or withholding of removal (both statutory and under CAT) because he "provided material support to a terrorist organization" in the form of his "interrogation translation." *Id.* at 4. Because the material support bar was "dispositive" as to Sufiyan's claims for asylum, statutory withholding of removal, and withholding of removal under CAT, the BIA declined to address Sufiyan's other arguments relating to those forms of relief. *Id.* at 4–5. As for the deferral of removal under CAT, the BIA affirmed the IJ, reasoning that there was no clear error in the IJ's conclusion that Sufiyan failed to prove it was more likely than not that Sufiyan would be subjected to torture upon return to Sri Lanka. Sufiyan petitioned this Court for review, challenging the agency's rejection of his claim for deferral of removal under CAT and arguing that the BIA erred in failing to make findings as to his other claims for relief that could enable him to seek a waiver of the material support bar.

## DISCUSSION

We have jurisdiction to review Sufiyan's final order of removal. *See* 8 U.S.C. § 1252. "[W]e review the decision of the IJ as supplemented by the BIA," but we

9

consider only the grounds for the IJ's decision that the BIA reached and relied on."[2]

*Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the IJ's factual findings for substantial evidence, which means we will "uphold the IJ's factual findings if they are supported by reasonable, substantial, and probative evidence in the record." *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review questions of law and the application of law to facts anew, without deferring to the reasoning of the BIA. *See Yanqin Weng*, 562 F.3d at 513.

On this petition for review, Sufiyan argues that the IJ and the BIA (1) erroneously denied his claim for deferral of removal under CAT, (2) should have considered whether he would be eligible for asylum and withholding of removal (both statutory and under CAT) but for the material support bar, and (3) should have determined whether he provided material support to the LTTE under duress. We address each argument in turn.

---

[2] In quotations from caselaw, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

**I. CAT Relief**

Noncitizens must receive "protection under CAT when [they are] more likely than not to be tortured in the proposed country of removal." *Savchuck v. Mukasey*, 518 F.3d 119, 123 (2d Cir. 2008); *see also* 8 C.F.R. § 208.16(c)(2). In assessing whether Sufiyan satisfied his burden of proof, the IJ had a duty to consider all evidence relevant to the possibility of future torture, including evidence of past torture, the applicant's ability to relocate, and violations of human rights within the country of removal. *See* 8 C.F.R. § 1208.16(c)(3); *see also Manning v. Barr*, 954 F.3d 477, 488 (2d Cir. 2020). The material support bar precludes a grant of withholding of removal under CAT, 8 C.F.R. § 1208.16(d)(2), but does not preclude deferral of removal under CAT, *see Matter of M-H-Z-*, 26 I. & N. Dec. 757, 763 n.7 (B.I.A. 2016) (citing 8 C.F.R. § 1208.17). But the standard for protection under CAT is the same for both forms of relief: the applicant must establish that it is more likely than not that the applicant would be tortured if removed to the proposed country of removal. 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a).

The IJ concluded that Sufiyan did not establish that he had experienced past torture because he did not corroborate his testimony about his treatment by the Sri Lankan army with medical records or detailed statements from his family or friends that supported Sufiyan's account of enduring violence at the hands of the

Sri Lankan army. Even accepting Sufiyan's argument that corroboration is not required for a CAT claim when the applicant is deemed credible, Sufiyan safely relocated within Sri Lanka and used his own passport to leave Sri Lanka multiple times without any problems. The IJ could reasonably find that these facts outweighed Sufiyan's credible testimony. *See Manning*, 954 F.3d at 488.

Specifically, the IJ observed that following Sufiyan's detention and alleged torture by the Sri Lankan army in 2009, Sufiyan relocated to Maskeliya, where he lived for three and a half years without any problems or interactions with authorities. He then left Sri Lanka, traveled to the United States, worked on a ship for ten months, returned to Sri Lanka, and lived in Maskeliya for another two to three months, all without experiencing any confrontations with Sri Lankan authorities. The IJ therefore concluded that "it appears that the Sri Lankan government is not looking for [Sufiyan]," undercutting the likelihood of future torture. CAR at 60.

The IJ also considered Sufiyan's evidence regarding the torture of returned asylum seekers. The IJ found that Sufiyan was not similarly situated to those returned asylum seekers because he was not "directly linked" to the LTTE and had traveled in and out of Sri Lanka without incident on several occasions following his 2009 detention. The IJ also noted that asylum proceedings are confidential, and

12

Sufiyan "provided no information that the Sri Lankan government would be informed that he was a failed asylum seeker." CAR at 61. In delineating its conclusions, the IJ made clear that he "would still deny" Sufiyan's request for withholding of removal under CAT even if the material support bar did not apply. CAR at 59.

Finding no clear error in the IJ's findings, nor in the IJ's conclusion that Sufiyan did not show that he would more likely than not be subjected to torture inflicted by or with the consent, acquiescence or willful blindness of a public official or other person acting in an official capacity, the BIA affirmed the IJ's denial of Sufiyan's request for deferral of removal under CAT.

Sufiyan disagrees with many of these conclusions, but "substantial evidence review does not contemplate any judicial reweighing of evidence." *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593 (2d Cir. 2021). Instead, "it requires us to ask only whether record evidence compelled a[] . . . finding different from that reached by the agency." *Id.* at 593–94. The IJ's factual findings here have the support of "reasonable, substantial[,] and probative evidence in the record." *Yanqin Weng*, 562 F.3d at 513.

Although the BIA treated Sufiyan's claim for withholding of removal under CAT as "pretermitted," CAR 03, its affirmance of the IJ's determination that

13

Sufiyan failed to show that he would more likely than not be tortured by or with the acquiescence of the government upon his return to Sri Lanka, supported by substantial evidence, is dispositive of both claims for relief under CAT—deferral *and* withholding of removal. *See* 8 C.F.R. § 1208.16(c)(2) ("The burden of proof is on the applicant for withholding of removal under [CAT] to establish that it is more likely than not that [the applicant] would be tortured if removed to the proposed country of removal."). Accordingly, we deny Sufiyan's petition for review as it relates to his CAT claims without regard to the applicability of the material support bar.

## II. The INA, Material Support Bar and But-For Determinations

A person who "has engaged in a terrorist activity" as described in 8 U.S.C. § 1182(a)(3)(B)(i)(I) is generally ineligible for asylum and statutory withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(v), 1231(b)(3)(B)(iv), 1227(a)(4)(B)[3]. The INA "defines engaging in a terrorist activity to include providing material support to terrorist organizations or individuals." *Ay v. Holder*, 743 F.3d 317, 319 (2d Cir.

___

[3] The material support bar also precludes withholding of removal relief under CAT. 8 C.F.R. § 1208.16(d)(2). Because, as set forth above, the BIA's assessment that Sufiyan failed to establish the requisite likelihood of torture by the government, or with government acquiescence, is dispositive of his request for withholding of removal under CAT, the BIA effectively determined that Sufiyan would not be entitled to withholding of removal under CAT in the absence of a material support bar. Accordingly, we do not discuss Sufiyan's request for withholding of removal under CAT in this section.

2014). The statute includes a process for seeking an exemption from USCIS to the material support bar. 8 U.S.C. § 1182(d)(3); Exercise of Authority Under Sec. 212(d)(3)(B)(i) of the Immigration and Nationality Act, 72 Fed. Reg. 26138–02, 26138-39 (May 8, 2007) ("D.H.S. Exercise of Authority") (implementing duress exception), *available at* Respondent Suppl. Exs., No. 22-6392, Dkt. 62.3 (July 24, 2024).

In this petition for review, Sufiyan does not dispute that he provided material support to the LTTE or that the LTTE is a designated terrorist group. Nor does he challenge the IJ's and BIA's application of the material support bar to his petitions for asylum and statutory withholding of removal. But Sufiyan argues that the BIA was required to determine whether he would be eligible for relief from removal *but for* the material support bar. We agree.

The BIA's decision to affirm the IJ's denial of asylum and statutory withholding of removal rested entirely on the material support bar, which the BIA described as "a dispositive issue" on those claims. CAR at 4–5. The BIA then did not "address [Sufiyan's] other appellate arguments" because "agencies are not required to make findings on issues which are not dispositive to the outcome of cases." *Id*. at 5.

That's ordinarily true. But here, under the regulatory scheme as currently constituted, the BIA was required to adjudicate the merits before (or alongside) adjudicating the material support question. Otherwise, the Department of Homeland Security's regulations and practices would effectively nullify the framework Congress established. The BIA already reached the same conclusion in *M-H-Z-*, 26 I. & N. Dec. at 757. We consider these points in more detail.

### A. Statutory and Regulatory Framework

Congress has created a statutory scheme in which a broad and categorical material support bar is paired with the opportunity to seek a discretionary exemption. And it has required cooperation among executive branch agencies to implement the scheme. The BIA's approach here renders the statutory exemption process a mirage, upending the framework Congress established, and leaving Sufiyan, and others like him, without the opportunity to apply for an exemption that Congress contemplated.

The terrorism bar and the exemption process are integral parts of a single whole. Sections 1158(b)(2)(A)(v), 1182(a) and 1182(d) of Title 8 establish a framework whereby the Attorney General, the Secretary of Homeland Security, and (in some cases) the Secretary of State can honor the United States' human rights obligations under international law, on the one hand, while serving its

16

national security interests on the other. *Annachamy v. Holder*, 733 F.3d 254, 264 (9th Cir. 2013) ("[W]e should defer to Congress's chosen method to try to strike the correct balance between the United States' humanitarian obligations and national security."), *overruled in part on other grounds by Abdisalan v. Holder*, 774 F.3d 517 (9th Cir. 2014).

Sections 1158(b)(2)(A)(v) and 1182(a) together comprise the material support bar, which designates any noncitizen who has provided even passing support to a terrorist organization "ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). The BIA and the Courts of Appeals have interpreted the material support bar to be, as a general matter, a sweeping statutory provision that bars many noncitizens from receiving asylum or withholding of removal in the United States—even though, in almost any other context, those noncitizens would not be seen to have culpably supported a terrorist organization. *See, e.g.*, *Hernandez v. Sessions*, 884 F.3d 107, 110–12 (2d Cir. 2018) (no exception to § 1182(a) for support provided under duress to a terrorist organization); *see also Matter of A-C-M-*, 27 I. & N. Dec. 303, 307 (B.I.A. 2018) (no exception to § 1182(a) for *de minimis* support provided to a terrorist organization); *Doleck Nepali v. Barr*, 828 F. App'x 14, 18 (2d Cir. 2020) (summary order) (same).

The sweeping material support bar is accompanied by an exemption process that offers potential relief to noncitizens who pose no danger to the United States. 8 U.S.C. § 1182(d)(3)(B). This process serves as a relief valve, mitigating the otherwise harsh consequences of the inflexible material support bar. *See Hernandez*, 884 F.3d at 116–17 (Droney, J., concurring) (suggesting that without an effective exemption process, the material support bar may render the United States in violation of its obligations as a signatory to the 1967 Protocol Relating to the Status of Refugees).

This scheme is implemented through a collaborative process involving multiple executive branch agencies. Congress has tasked the Attorney General (who, in turn, has delegated the authority to IJs and the BIA) with determining eligibility for asylum—including determining whether the material support bar applies. *See* 8 U.S.C. §§ 1158(b)(1)(A), (b)(2)(A)(v); *Hernandez*, 884 F.3d at 112 (majority opinion) ("Aliens for whom the waiver system may later become necessary still have a full and fair opportunity to have their claims for asylum or withholding of removal first heard and adjudicated by an immigration judge and the BIA, and it is through that adequate process that aliens may be deemed ineligible for relief if they are found to have provided material support to

terrorists."); *M-H-Z-*, 26 I. & N. Dec. at 762 n.5 ("The Immigration Judges and the Board do not have the authority to adjudicate [the] discretionary waiver.").

Congress has tasked the Secretary of Homeland Security with deciding,[4] *"after consultation with the Secretary of State and the Attorney General*," who is exempt from the severe consequences of the material support bar. 8 U.S.C. § 1182(d)(3)(B)(i) (emphasis added). The Secretary's exercise of *discretion* as to whether to grant an exemption is unreviewable, though the Secretary's *decision* on the question is reviewable (for questions of law), only in the context of judicial review of a final order of removal. *Id.*

Within the Department of Homeland Security, that authority has been delegated to USCIS, which grants exemptions to entire categories of noncitizens to whom the material support bar would ordinarily apply. *See, e.g.*, *A-C-M-*, 27 I. & N. Dec. at 308 & n.5, 309 n.6 (noting that USCIS grants exemptions to noncitizens who have provided only "insignificant material support" to nondesignated terrorist organizations); *Sesay v. Att'y Gen. of the United States*, 787 F.3d 215, 223 (3d Cir. 2015) ("[T]he Secretary of Homeland Security announced that the material support bar could be waived for aliens who provided material support under

---

[4] The Secretary of State may also exercise this authority, but not while removal proceedings are pending. *See* 8 U.S.C. § 1182(d)(3)(B)(i).

duress, pursuant to a number of different factors."); D.H.S. Exercise of Authority, 72 Fed. Reg. at 26138–02, 26138-39.

But USCIS won't even consider an application for an exemption unless and until the BIA has determined that the applicant is otherwise eligible for relief from removal and has issued a final order of removal based on the material support bar. *See* Fact Sheet: Department of Homeland Security Implements Exemption Authority for Certain Terrorist-Related Inadmissibility Grounds for Cases with Administratively Final Orders of Removal at 1 (U.S.C.I.S. Oct. 23, 2008) ("D.H.S. Fact Sheet") ("DHS will consider a case for an exemption only after an order of removal is administratively final. . . . By adjudicating the exemption at this stage, all parties will have a chance to litigate the merits of the case up through the BIA, and *DHS will be able to focus its resources on cases where the possible exemption is the only issue remaining in the individual's case.*") (emphasis added), *available at* Respondent Suppl. Exs., No. 22-6392, Dkt. 62.2 (July 24, 2024); D.H.S. Exercise of Authority, 72 Fed. Reg. at 26138 (extending duress exception to an applicant who "has been determined to be otherwise eligible for the benefit or protection"). This fact is well known to the BIA. *See M-H-Z-*, 26 I. & N. Dec. at 762 n.5 ("For the USCIS to consider granting such a waiver, it must first be shown that the alien is

seeking an immigration benefit or protection for which [the individual] has been determined to be otherwise eligible.").

In light of USCIS's established processes, the BIA's approach in this case frustrates Congress's design. Given the evidence here, an exemption might well be warranted—at gunpoint, Sufiyan briefly translated for members of a terrorist organization who held him captive for several days. But because the BIA did not determine that but-for the material support bar he would otherwise be eligible for protection, Sufiyan has no viable path to seek an exemption. That's contrary to Congress's design and deprives Sufiyan of an opportunity to apply for an exemption for which he may well qualify.

"If the operation of a different statute depends on a finding of fact or a conclusion of law from the BIA, then it is up to the BIA to devise administrative procedures that will assure that it performs its duty." *FH-T v. Holder*, 743 F.3d 1077, 1081 (7th Cir. 2014) (Wood, C.J., dissenting from denial of rehearing *en banc*). To hold otherwise would allow executive branch regulations and practices to effectively nullify the statute. *Cf. Costello v. Immigration and Naturalization Service*, 376 U.S. 120, 127–28 (1964) ("We would hesitate long before adopting a construction [that] would, with respect to an entire class of aliens, completely nullify a procedure so intrinsic a part of the legislative scheme.").

21

The dissent suggests that our view that the government cannot nullify acts of Congress rests on a "policy-based gripe." Dissent at 5. But the United States Constitution specifically provides that the Executive "shall take Care that the Laws be faithfully executed[.]" U.S. CONST. Art. II § 3. True, " '[a]bsent constitutional constraints or extremely compelling circumstances,' an agency 'should be free to fashion [its] own rules of procedure and to pursue methods of inquiry capable of permitting [it] to discharge [its] multitudinous duties.' " Dissent at 4 (citing *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543 (1978)). But when an agency—or a pair of agencies—"thwart[] the congressional scheme through their regulatory apparatus," that's a compelling circumstance, to say the least. *FH-T*, 743 F.3d at 1077 (Wood, C.J., dissenting from denial of rehearing *en banc*). And the argument that each agency—USCIS within the Department of Homeland Security and the Executive Office of Immigration Review within the Department of Justice—is acting within the scope of its individual authority ignores that *both* agencies are part of the Executive Branch that is charged with faithfully executing the laws enacted by Congress.

We reject the dissent's suggestion that the broad discretion conferred on the Secretary of Homeland Security to grant or deny exemptions from the material support bar overrides Congress's framework. While the manner in which the

22

Secretary of Homeland Security exercises *discretion* is unreviewable, the Secretary's *decision* to grant or deny an exemption is reviewable on appeal from a final order of removal. 8 U.S.C. § 1182(d)(3)(B)(i). The agencies' regulatory frameworks render the exemption, and judicial review of USCIS's denials thereof, a paper tiger.

### B. *Matter of M-H-Z-*

Our analysis isn't new. The BIA itself has essentially said the same thing, albeit in less detail. *See M-H-Z-*, 26 I. & N. Dec. at 757.

*M-H-Z-* concerned a noncitizen's application for asylum, withholding of removal, and CAT relief that—like Sufiyan's—was barred because the applicant provided material support to a terrorist organization as defined in § 1182(a). *Id.* at 758. Also like Sufiyan, the *M-H-Z-* applicant afforded support to a terrorist organization under threat of violence. *Id.* The issue raised in *M-H-Z-* was whether § 1182(a) contained an implied exception for applicants who provided material support to a terrorist organization under duress. *Id.* at 759. The BIA held that no such statutory exception existed, observing that the § 1182(d) exemption process was "the only remedy for an alien who has provided material support to a terrorist organization." *Id.* at 762 & n.5.

The BIA then recognized the potential quandary Sufiyan has identified here: "For the USCIS to consider granting such a waiver, it must first be shown that the alien is seeking an immigration benefit or protection for which he or she has been determined to be otherwise eligible." *Id.* at 762 n.5 (collecting USCIS guidance). Accordingly, the BIA explained,

> [C]onsistent with this waiver scheme, Immigration Judges should ordinarily determine first whether an alien is otherwise eligible for the benefit or protection sought. Only if it is determined that the alien is otherwise eligible would it be necessary or appropriate to consider whether the material support bar applies.

*Id.* This rule is not a new or controversial one. In fact, at an earlier stage in *M-H-Z-*, the BIA "remanded the record for the Immigration Judge to make an explicit determination whether, in the absence of the material support bar, the [applicant] would otherwise be eligible for relief, which would allow her to request a discretionary waiver of the material support bar from the DHS." *Id.* at 758. And *amicus* cites a non-precedential BIA decision remanding a case so the IJ could make a "but-for" determination. *See Matter of [redacted], A[redacted]*, (B.I.A. Apr. 5, 2022) (holding that the IJ *must* make a finding that an asylum or withholding of removal application would be granted but for the material support bar so that USCIS could consider a discretionary waiver), *available at* Br. of *Amicus Curiae* Human Rights First, No. 22-6392, Dkt. No. 93 at 15–16 (Oct. 24, 2024).

We disagree with the Respondent's contention that the BIA's own rule is rendered optional by its statement that IJs should "*ordinarily*" determine first whether an applicant is otherwise eligible for relief from removal. *M-H-Z-*, 26 I. & N. Dec. at 762 n.5 (emphasis added). *See* Respondent Suppl. Br. at 7 n.2. That argument fails to grapple with the BIA's following statement that "*[o]nly if it is determined that the alien is otherwise eligible*" for relief is it "necessary or appropriate" for the agency to consider the material support bar. *M-H-Z-*, 26 I. & N. Dec. at 762 n.5 (emphasis added). The words "only if" suggest that the IJ's discretion on this point is limited rather than unfettered. Taken as a whole, *M-H-Z-* clearly suggests that it would be unnecessary and improper to adjudicate the material support bar if other alternative bases exist for denying relief.

That's consistent with how "ordinarily" is usually used; the term suggests a default rule subject to exceptions in certain circumstances, not unbounded discretion. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (under 42 U.S.C. § 1988, a prevailing plaintiff "should ordinarily recover an attorney's fee *unless special circumstances would render such an award unjust*") (emphasis added); *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (in a Fourth Amendment challenge to prison searches, "courts should ordinarily defer" to prison officials *absent evidence that prison officials have overstated security concerns*). The BIA supplied no reasoned basis

25

to depart from its "ordinary" practice by refusing to consider Sufiyan's eligibility for asylum and statutory withholding of removal. And, of course, "the BIA is required to follow its own precedent." *Paucar v. Garland*, 84 F.4th 71, 87 (2d Cir. 2023).

We are mindful not to impose rote procedural requirements on the BIA, and the BIA is free to create procedures that serve its own institutional needs while still implementing the statutory system Congress had in mind. *See FH-T*, 743 F.3d at 1081 (Wood, C.J., dissenting from denial of rehearing *en banc*). And we acknowledge that there may be other ways for the Executive branch to ensure compliance with Congress's directives. *See id.* at 1077. But absent changes to one or both agencies' processes, the only way to ensure compliance with Congress's directives is to require the BIA to make the necessary findings.

We are confident that today's rule does not require the BIA to undertake onerous new analyses; after all, the BIA itself has already held that a but-for eligibility determination "should ordinarily" consider applicability of the material support bar only when it is the last remaining issue in a noncitizen's asylum case, *see M-H-Z-*, 26 I. & N. Dec. at 762 n.5, and the BIA already has a legal responsibility for adjudicating asylum claims generally. Moreover, Congress's direction to the Secretary of Homeland Security (through USCIS) to build "consultation with the

. . . Attorney General" into the review for material-support exemptions reinforces that requiring the BIA to make but-for eligibility determinations fits comfortably within the statutory scheme. 8 U.S.C. § 1182(d)(3)(B)(i).

For these reasons, we agree with Sufiyan that the BIA erred by failing to adjudicate his claims for asylum and statutory withholding of removal to determine whether he would be eligible for either of these forms of relief but for the material support bar.[5]

## III. Duress Determination

Sufiyan also asked the IJ and the BIA to make a factual determination that Sufiyan provided material support to the LTTE under duress—a determination that might pave the way for USCIS's application of the duress exemption to the material support bar. In contrast to the but-for eligibility determination, we see

---

[5] We reject Respondent's contention that the CAT determination is dispositive of Sufyan's claims for asylum and withholding of removal, which Respondent contends are resolved by the same findings that undergird that agency's CAT determination. The standards for showing entitlement to asylum and statutory withholding of removal are distinct from the standard for establishing the right to protection under CAT. The latter requires a showing that the applicant is likely to face torture upon return to the country of removal, 8 C.F.R. § 1208.16(c)(2); the former require a showing that the applicant suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A), 1231(b)(3); 8 C.F.R. §§ 1208.13(b), 1208.16(b). The BIA's affirmance of the IJ's CAT determination thus does not resolve the merits of the asylum and withholding claims. And because the BIA affirmed the IJ's denial of asylum and statutory withholding of removal based on the material support bar, it expressly declined to address the merits of those claims.

nothing in the statutory scheme that would compel the IJ and BIA to make such a determination.

The IJ and BIA have no hand in adjudicating the discretionary waiver of the material support bar—including waivers arising from the duress exemption. *See Hernandez*, 884 F.3d at 110–12; *see also M-H-Z-*, 26 I. & N. Dec. at 762 n.5 ("The [IJs] and the [BIA] do not have the authority to adjudicate this discretionary waiver.").

And in contrast to the but-for eligibility determination, a finding by the IJ or the BIA that Sufiyan was under duress when he gave material support to a terrorist organization is *not* a prerequisite to seeking a waiver of the material support bar from USCIS. Rather, the Secretary of Homeland Security set forth specific criteria for applicants to qualify for the material support duress exemption and delegated *to USCIS* the sole "discretion to determine whether the criteria are met." D.H.S. Exercise of Authority, 72 Fed. Reg. at 26138 (identifying factors relevant to the duress determination, including whether the applicant "reasonably could have avoided, or took steps to avoid, providing material support, the severity and type of harm inflicted or threatened, to whom the harm was directed, and, in cases of threats alone, the perceived imminence of the harm threatened and the perceived likelihood that the harm would be inflicted"); *see also* D.H.S. Fact Sheet at 1–2

28

(explaining that the USCIS determination as to the exemption from the material support bar is within the sole discretion of the Secretary of Homeland Security).

Whether a noncitizen provided material support to a terrorist organization under duress is a factual question for USCIS to evaluate on the merits of the noncitizen's application for a material support bar waiver. Thus, it isn't something that the BIA must address in the first instance, and the IJ and BIA were not obliged to determine whether Sufiyan provided support to the LTTE under duress.

## CONCLUSION

For these reasons, we **GRANT** the petition for review in part and **REMAND** the case to the BIA to determine whether Sufiyan would qualify for asylum or statutory withholding under the INA but for the material support bar. We **DENY** Sufiyan's petition for review of the agency's denial of his request for withholding or deferral of removal under CAT.

RICHARD J. SULLIVAN, *Circuit Judge*, concurring in part and dissenting in part:

I join the majority in holding that the agency did not err in denying petitioner Mohamed Irshan Mohamed Sufiyan's claim for relief under the Convention Against Torture and in declining to determine whether Sufiyan provided material support to a designated foreign terrorist organization under duress. But I cannot agree that the Board of Immigration Appeals (the "BIA") was required to determine whether Sufiyan was "eligible for relief from removal *but for* the material support bar." Maj. Op. at 15. It is axiomatic that "agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach." *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976). The majority gives short shrift to that well-established principle and eschews the careful analysis of one of our sister Circuits, which held that the BIA is *not* required to determine whether an applicant who provided material support to a terrorist group is otherwise eligible for relief. *See FH-T v. Holder*, 723 F.3d 833, 843–46 (7th Cir. 2013). To reach its holding, the majority unduly focuses on policy considerations and hangs its hat on a footnote in a single BIA decision. But neither compels the conclusion that the majority reaches today. Accordingly, I respectfully dissent from this portion of the majority opinion.

As the majority recounts, an applicant who "has engaged in a terrorist activity" as described in 8 U.S.C. § 1182(a)(3)(B)(i)(I) is generally ineligible for asylum and withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(v), 1231(b)(3)(B)(iv), 1227(a)(4)(B); 8 C.F.R. § 1208.16(d)(2). The Immigration and Nationality Act "defines engaging in a terrorist activity to include providing material support to terrorist organizations or individuals." *Ay v. Holder*, 743 F.3d 317, 319 (2d Cir. 2014) (alterations accepted and internal quotation marks omitted). This bar applies even when an applicant provided material support under duress. *See, e.g.*, *Hernandez v. Sessions*, 884 F.3d 107, 110–12 (2d Cir. 2018). Nevertheless, Congress permitted "the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General," to create a process for granting discretionary waivers of the material-support bar. 8 U.S.C. § 1182(d)(3)(B)(i).

Acting pursuant to that authority, the Secretary of Homeland Security has created an exemption for applicants who provided material support under duress and set forth specific criteria for applicants to qualify for that exemption. One such requirement is that the applicant "has been determined to be otherwise eligible" for relief such as asylum or withholding of removal. 72 Fed. Reg. 26138, 26138 (May 8, 2007). The Secretary delegated the *sole* "discretion to determine

2

whether the criteria are met" to U.S. Citizenship and Immigration Services ("USCIS"). *Id.* In other words, "[t]he Immigration Judges and the [BIA] do not have the authority to adjudicate this discretionary waiver." *Matter of M-H-Z-*, 26 I. & N. Dec. 757, 762 n.5 (B.I.A. 2016); *see also In re S-K-*, 23 I. & N. Dec. 936, 941 (B.I.A. 2006) ("Congress . . . only granted the power to make exemptions to the Attorney General and the Secretaries of State and Homeland Security, who have not delegated such power to the Immigration Judges or the [BIA]."), *overruled on other grounds by Matter of Negusie*, 28 I. & N. Dec. 120 (U.S. Att'y Gen. 2020).

Sufiyan does not dispute that he provided material support to a designated terrorist group. Nevertheless, he argues that the BIA should have determined whether he was otherwise eligible for asylum or withholding of removal so that he could apply for a discretionary waiver from USCIS. Because the material-support bar was "dispositive" of Sufiyan's claims for asylum and withholding of removal, the BIA declined to take up the question of whether he was otherwise eligible for these forms of relief, noting the rule that "agencies are not required to make findings on issues which are not dispositive to the outcome of cases." Certified Admin. Rec. at 4–5. The majority today upends that principle and imposes a judge-made rule of procedure on the BIA, requiring it to determine

3

whether *every* applicant subject to the material-support bar is otherwise eligible for asylum or withholding of removal. That holding is simply wrong and finds no support in either statute or caselaw.

The Supreme Court has long held that "[a]bsent constitutional constraints or extremely compelling circumstances," an agency "should be free to fashion [its] own rules of procedure and to pursue methods of inquiry capable of permitting [it] to discharge [its] multitudinous duties." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (internal quotation marks omitted). It is for this reason that the Seventh Circuit previously held that the BIA is *not* required to determine whether an applicant would be eligible for relief but for the material-support bar. The Seventh Circuit correctly recognized that "a decree requiring a specific method of [BIA] adjudication in every case in which a petitioner holds himself out as eligible for a waiver to the terrorism bars may serve only to prolong the resolution of cases in an already strained system." *FH-T*, 723 F.3d at 845. What's more, there is nothing to suggest that "Congress . . . intended the waiver provision to require Board adjudication of the merits of asylum claims in every case triggering the material support for terrorism bar." *Id.* at 846.

The majority admits that agencies are generally "free to fashion [their] own rules of procedure," but argues that "compelling circumstance[s]" justify departing from that rule because the BIA's approach "thwart[s] the congressional scheme." Maj. Op. at 22 (internal quotation marks omitted). But the majority's policy-based gripe is with USCIS – which has decided that it "will consider a case for an exemption only after an order of removal is administratively final" and the BIA determines that an applicant is otherwise eligible for asylum or withholding of removal, Doc. No. 62.2 at 1; 72 Fed. Reg. at 26138 – *not* with the BIA. Indeed, there is nothing in the regulation creating the duress waiver that requires the BIA to decide whether an applicant is "otherwise eligible" for relief. *Id.* USCIS has simply chosen "to focus its resources on cases where the possible exemption is the only issue remaining in the individual's case." Doc. No. 62.2 at 1. In other words, USCIS *could* review Sufiyan's waiver application – even in the absence of a determination by the BIA that he is otherwise eligible for relief – but has elected not to do so based on resource constraints. That may be unwise or misguided, but it is surely USCIS's prerogative – not the Court's – to choose how to allocate its resources. I am aware of no authority – and the majority cites none – suggesting that one agency's discretionary decision on how to focus its limited resources can

5

impose a binding legal obligation on another government agency. It is perhaps

for this reason that the majority primarily relies on a single dissent from the denial

of rehearing *en banc* in *FH-T*. *See* Maj. Op. at 21 (citing *FH-T v. Holder*, 743 F.3d

1077, 1081 (7th Cir. 2014) (Wood, *J.*, dissenting from denial of rehearing *en banc*)).

That, of course, is a far cry from binding legal authority.

The majority "acknowledge[s]" that USCIS could mitigate the purported

problem, but it insists that "absent changes to one or both agencies' processes, the

only way to ensure compliance with Congress's directives is to require the BIA to

make the necessary findings." Maj. Op. at 26. The majority does not explain from

what source we have derived the power to force the BIA to address USCIS's

purported shortcomings, but it generally relies on the proposition that "*both*

agencies are part of the Executive Branch that is charged with faithfully executing

the laws enacted by Congress." *Id.* at 22 (citing U.S. Const. Art. II § 3). The whole

question, however, is what those laws require. Unable to find any textual mooring

for its novel theory, the majority instead points vaguely to the "statutory scheme,"

which, it says, mandates that every asylum seeker must have the "opportunity to

seek a discretionary exemption." Maj. Op. at 16. But section 1182(d) provides that

the Secretary of Homeland Security or Secretary of State *"may* determine in such

Secretary's sole unreviewable discretion" that the material-support bar should not apply in certain circumstances. 8 U.S.C. § 1182(d)(3)(B)(i) (emphasis added). Even if invoking nebulous congressional intent could overcome the lack of any statutory obligation, I cannot find in the permissive language of this broad grant of discretion an overriding congressional directive to grant every asylum seeker who has materially supported terrorism the chance to seek a discretionary waiver.

The majority next asserts that its holding is compelled by a solitary footnote in the BIA's decision in *Matter of M-H-Z-*, 26 I. & N. Dec. at 762 n.5. But that is clearly not so. The footnote merely stated that "Immigration Judges *should ordinarily* determine first whether an alien is otherwise eligible for the benefit or protection sought." *Id.* (emphasis added). Such language is clearly permissive rather than mandatory: as we have explained, "the common meaning of 'should' suggests or recommends a course of action, while the ordinary understanding of 'shall' describes a course of action that is mandatory." *United States v. Maria*, 186 F.3d 65, 70 (2d Cir. 1999); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012) ("[P]ermissive words grant discretion.").

Indeed, it is hard to imagine that the BIA imposed a new procedural obligation on itself buried in the footnote of an opinion using such vague language

7

and with no citations to any legal authority. As the Supreme Court has repeatedly recognized, elephants do not hide in mouseholes. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It is thus hardly surprising that in the nine years since *M-H-Z-* was decided, not a single published decision from the BIA or a Court of Appeals has cited that portion of the footnote, thus undermining the argument that *M-H-Z-* established a new procedural requirement.

The majority also cites an unpublished BIA decision provided by an *amicus* in this appeal. But the law in our Circuit is clear: "[U]npublished opinions of the BIA have no precedential value" and "the BIA['s] fail[ure] to adhere to one of its prior unpublished decisions . . . is of no moment." *Ajdin v. Bureau of Citizenship & Immigr. Servs.*, 437 F.3d 261, 264–65 (2d Cir. 2006); *see also Paucar v. Garland*, 84 F.4th 71, 84 (2d Cir. 2023). More importantly, the unpublished decision does not stand for the proposition, as the majority claims, that the BIA is required to determine whether an applicant is otherwise eligible for relief. In that case, the applicant filed a motion for remand to the Immigration Judge ("IJ") to determine whether he would be eligible for relief but for the material-support bar. When the government did not respond to the motion, the BIA simply declared that, "[g]iven the particular circumstances presented in this case, we will reopen the proceedings

8

pursuant to our discretionary *sua sponte* authority," and then remanded the matter to the IJ. Hum. Rts. First Amicus Br. at 12. The language in the decision makes clear that the BIA did not perceive there to be a legal obligation to determine whether an applicant was otherwise eligible for relief; it merely exercised its considerable discretion to do so based on the unique circumstances of the case. Again not surprisingly, the unpublished decision did not even cite *M-H-Z-*, casting further doubt on the majority's contention that *M-H-Z-* created a binding rule of procedure.

Finally, the majority makes much of the fact that Congress has "direct[ed]" that the Secretary of Homeland Security "consult[]" with the Attorney General when determining exemptions. Maj. Op. at 26–27 (internal quotation marks omitted). It is true that under 8 U.S.C. § 1182(d)(3)(B)(i) "the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that [the material-support bar] shall not apply with respect to an alien." But the majority cites no authority for the proposition that the Attorney General plays this role by delegating authority to the BIA, which then interacts with USCIS. Rather, section 1182(d)(3)(B)(i) simply requires key Executive Branch officials to confer before the

9

Secretary of Homeland Security exempts broad categories of individuals from the material-support bar. *See, e.g.*, 72 Fed. Reg. at 26138 ("Following consultations with the Secretary of State and the Attorney General, I hereby conclude . . . that [the material-support bar] shall not apply with respect to material support provided under duress."); *see also Terrorism-Related Inadmissibility Grounds (TRIG) – Situational Exemptions*, U.S. Citizenship & Immigr. Servs. (Jan. 24, 2025), https://perma.cc/ZP67-BMD4 (listing categories of individuals exempted from the material-support bar). The plain meaning of "consultation" – defined as "[t]he act of asking the advice or opinion of someone (such as a lawyer)," or "[a] meeting in which parties consult or confer," *Consultation*, *Black's Law Dictionary* (12th Ed. 2024) – can hardly be stretched to include case-specific administrative decisions rendered by the BIA (technically an authority housed within the Department of Justice) that might ultimately be read by officials at USCIS (technically an agency housed within the Department of Homeland Security). If that were enough, then it might also be said that Congress "consults" with the federal courts whenever the latter engage in judicial review of a statute – a usage that no one could seriously propose.

For all these reasons, I am convinced that the BIA has no obligation to determine whether an applicant would be eligible for relief but for the material-support bar. I therefore respectfully dissent from this portion of the majority's opinion and would deny Sufiyan's petition for review in its entirety.